

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00366-CR

Daniel James **WEEMS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR6570
Honorable Sid L. Harle, Judge Presiding[1]

Opinion by:  Karen Angelini, Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 14, 2014

REVERSED AND REMANDED

At issue in this appeal is whether the warrantless blood draw administered to Daniel James

Weems violated his rights under the Fourth Amendment to the Constitution. Because we hold that

Weems's rights under the Fourth Amendment were violated, we reverse the judgment of the trial

court and remand for a new trial.

---

[1] The Honorable Sid Harle signed the trial court's judgment.  The Honorable George Goodwin, sitting as a visiting judge, presided over the trial.

**BACKGROUND**

Weems was charged with the felony offense of driving while intoxicated with a "repeat felony offender" enhancement allegation. At trial, the arresting officer, Jimmy Bustamante of the Bexar County Sheriff's Office, testified that on June 4, 2011, around midnight, he was dispatched for a major automobile crash. A vehicle had hit a telephone pole and was turned upside down on its roof. Witnesses reported that the driver, who was wearing a Harley Davidson shirt and tan pants, ran from the scene. The passenger of the vehicle had been transported to the hospital by ambulance.

The driver, Weems, was found about a quarter mile east from the crash site hiding underneath a car. Weems had cuts, scrapes, and bruises consistent with the crash. Officer Bustamante testified that a strong odor of alcohol emanated from his breath, and Weems had bloodshot eyes. Weems was unsteady and swaying, and had slurred speech. The officer handcuffed Weems and read the DIC-24 form requesting a breath or blood specimen. Weems refused to provide a specimen. According to Officer Bustamante, no field sobriety tests were performed because Weems had been involved in a car crash and was complaining of back and neck pains. Because of his medical complaints, Weems was transported to the hospital, and a mandatory blood draw was taken there, instead of at the San Antonio Magistrate's Office. No warrant was procured for the blood draw. Officer Bustamante testified that a mandatory blood draw was taken because Weems was driving a car involved in a crash and the passenger was injured. According to Officer Bustamante, two to three hours passed between the time of the crash and the time a specimen of Weems's blood was taken.

The passenger of the car, Scott Noland, also testified. According to Noland, on June 4, 2011, he and Weems had been drinking beer and working on Weems's car. At around 10:45 p.m., they went down the street to a bar. Weems drove. At the bar, they each had two mixed drinks. They left the bar around 11:30 p.m., intending to go back to Weems's home. Weems was driving

the car when "he slowly started to veer off the road" and a "second later we were just tumbling around and spinning around and the accident happened." The vehicle "had flipped over on to its roof" and "the front end of the car was facing towards the road." Noland got out of the car, and some people who had been passing by helped him to sit down. Noland testified that Weems also got out of the car and then he noticed that Weems had left the scene. At the hospital, Noland "had to get some stiches and staples on the side of [his] head."

Veronica Hargrove, who is employed at the Bexar County Medical Examiner's Office in the toxicology lab, testified that at 2:30 a.m., Weems's blood ethanol concentration was 0.18 grams per deciliter. According to Hargrove, on average, a person eliminates alcohol at about 0.02 grams per deciliter per hour. So, on average, a person who was at 0.18 at 2:30 a.m. and did not drink any additional alcohol would have had a blood ethanol concentration of 0.24 at 11:30 p.m. Hargrove testified that because Weems took his last drink at around 11:30 p.m. and his blood was drawn at 2:30 a.m., if he "only had a couple of drinks at 11:30, it would be unlikely that [he was] below 0.08" at the time of the accident. Hargrove estimated that Weems had consumed about twelve drinks.

After hearing the evidence, the jury found Weems guilty of driving while intoxicated. Weems appeals.

## DISCUSSION

Weems argues the trial court erred in failing to suppress the results of the warrantless blood draw. Before trial, Weems filed a pretrial motion to suppress, but there was no pretrial hearing and the trial court did not rule on the pretrial motion. Before Hargrove testified during trial, however, Weems moved to suppress any evidence related to the blood draw, explaining that the Supreme

Court had that day issued its opinion in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). The trial

court declined to suppress any evidence.[2]

### A. Warrantless searches are not reasonable under the Fourth Amendment unless they fall within a recognized exception to the warrant requirement.

The Fourth Amendment provides that "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The

Supreme Court has held that a warrantless search of the person is reasonable only if it falls within

a recognized exception. *See, e.g., McNeely*, 113 S. Ct. at 1558; *United States v. Robinson*, 414

U.S. 218, 224 (1973). Exigent circumstances is one such well-recognized exception. *McNeely*, 113

S. Ct. at 1558. The State argues in this case that the statutory scheme found in the Texas

Transportation Code, which implies consent of a driver and mandates blood draws under certain

scenarios, is "a reasonable substitute" for the Fourth Amendment's warrant requirement. In other

words, it argues that this statutory scheme should be considered an exception to the warrant

requirement. We hold that it is not.

### B. Does Texas's implied consent and mandatory blood draw statutory scheme constitute an exception to the Fourth Amendment's warrant requirement?

The implied consent statute, found in section 724.011(a) of the Texas Transportation Code

provides the following:

> If a person is arrested for an offense arising out of acts alleged to have been
> committed while the person was operating a motor vehicle in a public place, or a
> watercraft, while intoxicated . . ., the person is deemed to have consented, subject
> to this chapter, to submit to the taking of one or more specimens of the person's
> breath or blood for analysis to determine the alcohol concentration or the presence

---

[2] On appeal, the State argues Weems did not preserve this issue for appeal. We disagree and hold that Weems preserved the issue by arguing his suppression motion before Hargrove testified. *See Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013) (criticizing the court of appeals's "parsing of appellant's objections" as "the kind of hyper-technical analysis that we have repeatedly rejected").

in the person's body of a controlled substance, drug, dangerous drug, or other substance.

TEX. TRANSP. CODE ANN. § 724.011(a) (West 2011). Section 724.013, in turn, states that "[e]xcept as provided by section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer." *Id.* § 724.013. Section 724.012(b) requires a peace officer to take a specimen of a person's breath or blood, even if the person refuses, if the person is arrested for an intoxication offense under chapter 49 of the Penal Code involving the operation of a motor vehicle or watercraft and

> (1) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident: (A) an individual has died or will die; (B) an individual other than the person has suffered serious bodily injury; or (C) an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment;

> (2) the offense for which the officer arrests the person is [driving while intoxicated with a child passenger]; or

> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person (A) has been previously convicted of or placed on community supervision for [driving while intoxicated with a child passenger, intoxication assault, or intoxication manslaughter]; or (B) has been on two or more occasions previously convicted of or placed on community supervision for [driving while intoxicated, flying while intoxicated, boating while intoxicated, or assembling or operating an amusement ride while intoxicated].

*Id.* § 724.012(b). In this case, Officer Bustamante testified that the blood draw was administered because a person other than Weems suffered bodily injury and was transported to a hospital for medical attention. The State also points out that the THP-51 form, which was admitted in evidence, indicates that the blood draw was also ordered because Weems had two prior DWI convictions.

In support of its argument that the warrantless blood draw was reasonable pursuant to the implied consent and mandatory blood draw statutes, the State relies on the following dicta from *Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002):

> The implied consent law does just that–it implies a suspect's consent to a search in certain instances. *This is important when there is no search warrant, since it is another method of conducting a constitutionally valid search*. On the other hand, if the State has a valid search warrant, it has no need to obtain the suspect's consent.
>
> *The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant*. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances *even without a search warrant*.

*Id.* (emphasis added). Although this language is dicta, the Texas Court of Criminal Appeals did recognize in *Beeman* that the implied consent statute expanded the State's authority to draw a DWI suspect's blood in the absence of a warrant.

We relied on this dicta in *Beeman* in *Aviles v. State*, 385 S.W.3d 110, 116 (Tex. App.—San Antonio 2012), *vacated*, 134 S. Ct. 902 (2014), where we held that a warrantless blood draw of a DWI suspect that was conducted according to the prescriptions of the Transportation Code did not violate the suspect's rights under the Fourth Amendment. In so holding, we first quoted the dicta in *Beeman* for the proposition that the implied consent law allows officers to draw blood "in certain limited circumstances even without a search warrant." *Id.* at 115. We reasoned that "[t]his situation, as outlined in section 724.012, is one of the 'circumstances' the Texas Court of Criminal Appeals has held where blood may be drawn without a search warrant." *Id.* at 116 (citing *Beeman*, 86 S.W.3d at 616). We concluded that whether the officer could have obtained a warrant before authorizing the blood draw was "immaterial given the mandate of section 724.012(b)(3)(B)." *Id.* at 116. Thus, we held that "the warrantless seizure of Aviles's blood was conducted according to the prescriptions of the Transportation Code, and without violating Aviles's Fourth Amendment rights." *Id.* The Texas Court of Criminal Appeals denied Aviles's petition for discretionary review. However, on January 13, 2014, the Supreme Court granted

certiorari and vacated our judgment. *Aviles v. State*, 134 S. Ct. 902 (2014). It then remanded the case to this court "for further consideration in light of *Missouri v. McNeely*." *Id.*

### C. The Supreme Court's decision in McNeely *prohibits per se rules that justify an exception to the Fourth Amendment's warrant requirement.*

In *McNeely*, 133 S. Ct. at 1556, the Supreme Court addressed "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." The Court concluded that it did not and rejected the State's suggested *per se* rule. *Id.* Instead, the Court held that "consistent with general Fourth Amendment principles," "exigency in this context must be determined case by case based on the totality of the circumstances."[3] *Id.*

*McNeely* dealt with a typical DWI traffic stop where the driver, McNeely, failed field-sobriety tests and refused to use a portable breath-test device to measure his blood-alcohol concentration (BAC). *Id.* at 1557. After McNeely was placed under arrest for DWI, he was taken to a nearby hospital for blood testing. No warrant was obtained. *Id.* Less than thirty minutes after McNeely was first stopped by the officer, his blood was taken without his consent by a hospital lab technician. *Id.* The results of the blood test measured McNeely's BAC at 0.154. *Id.*

---

[3] Justice Sotomayor was the author of *McNeely*. Parts I, II-A, II-B, and IV of the opinion were joined by Justices Scalia, Kennedy, Ginsburg, and Kagan and thus constitute the majority opinion of the Court. Parts II-C and III were joined only by Justices Scalia, Ginsburg, and Kagan and thus constitute a plurality opinion. Justice Kennedy wrote a separate concurrence. Chief Justice Roberts wrote an opinion concurring in part and dissenting in part, which was joined by Justices Breyer and Alito. Justice Thomas wrote a dissenting opinion. The plurality portions of *McNeely* are directed toward Chief Justice Robert's opinion that he would adopt a *per se* rule, just a different one from the State. In Part III of *McNeely*, the plurality notes that the general importance of the government's interest in eradicating DWI "does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case." *McNeely*, 133 S. Ct. at 1565. The plurality notes that states have a "broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws." *Id.* at 1566. As an example, the plurality notes that all fifty states "have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the [s]tate, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." *Id.* "Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most [s]tates allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id.* Thus, the states have tools to combat drunk driving without having to resort to nonconsensual blood draws. *See id.*

McNeely moved to suppress the blood test results, arguing the warrantless blood draw violated his rights under the Fourth Amendment. *Id.* The State argued the exigency exception to the warrant requirement applied. *Id.* The Supreme Court "granted certiorari to resolve a split of authority on the question whether the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations." *Id.* at 1558.

The Court first emphasized that in *Schmerber v. California*, 384 U.S. 757 (1966), it had concluded (1) the warrant requirement applied generally to searches that intrude into the human body, and (2) absent an exception to the warrant requirement, a compelled blood draw was unconstitutional. *See McNeely*, 133 S. Ct. at 1558-59 (discussing *Schmerber*). The *McNeely* Court stressed that in holding the exigency exception to the warrant requirement authorized the warrantless compelled blood draw, the Court in *Schmerber* looked at the totality of circumstances. *Id.* at 1559. Thus, the *McNeely* Court emphasized that its analysis in *Schmerber* fit "comfortably within [its] case law applying the exigent circumstances exception." *Id.* at 1560. The Court explained that "[i]n finding the warrantless blood test reasonable in *Schmerber*, [it had] considered all of the facts and circumstances of the particular case and carefully based [its] holding on those specific facts." *Id.*

After reaffirming its holding in *Schmerber*, which it emphasized was based on the totality of the circumstances presented in that case, the *McNeely* Court then criticized the State for proposing a *per se* rule: "The State contends that whenever an officer has probable cause to believe an individual has been driving under the influence of alcohol, exigent circumstances will necessarily exist because BAC evidence is inherently evanescent." *Id.* "As a result, the State claims that so long as the officer has probable cause and the blood test is conducted in a reasonable manner, *it is categorically* reasonable for law enforcement to obtain the blood sample without a

warrant." *Id.* (emphasis added). The Court recognized that "as a result of the human body's natural metabolic processes, the alcohol level in a person's blood begins to dissipate once the alcohol is fully absorbed and continues to decline until the alcohol is eliminated." *Id.* Thus, "because an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results." *Id.* at 1561. The Court emphasized that this "fact was essential" to its holding in *Schmerber*, as it had recognized in *Schmerber* "that, under the circumstances, further delay in order to secure a warrant after the time spent investigating the scene of the accident and transporting the injured suspect to the hospital to receive treatment would have threatened the destruction of evidence." *Id.* But, the Court concluded that it did not follow that it "should depart from careful case-by-case assessment of exigency and adopt *the categorical rule* proposed by the State and its amici." *Id.* (emphasis added). According to the Court, "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* While the Court did "not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test," such circumstances are reasons "to decide each case on its facts," "not to accept the considerable overgeneralization that a *per se* rule would reflect." *Id.* (citations omitted).

The Court stressed that unlike "circumstances in which the suspect has control over easily disposable evidence," "BAC evidence from a drunk-driving suspect naturally dissipates over time in a gradual and relatively predictable manner." *Id.* "Moreover, because a police officer must typically transport a drunk-driving suspect to a medical facility and obtain the assistance of someone with appropriate medical training before conducting a blood test, some delay between

the time of the arrest or accident and the time of the test is inevitable regardless of whether police officers are required to obtain a warrant." *Id.*

The Court further emphasized that the State's proposed *per se* rule "fails to account for advances in the 47 years since *Schmerber* was decided that allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple." *Id.* at 1561-62. "Well over a majority of [s]tates allow police officers or prosecutors to apply for search warrants remotely through various means, including telephonic or radio communication, electronic communication such as e-mail, and video conferencing." *Id.* at 1562. "And in addition to technology-based developments, jurisdictions have found other ways to streamline the warrant process, such as by using standard-form warrant applications for drunk-driving investigations." *Id.* The Court explained that it was "by no means" claiming that "telecommunications innovations have, will, or should eliminate all delay from the warrant-application process." *Id.* "Warrants inevitably take some time for police officers or prosecutors to complete and for magistrate judges to review." *Id.* "But technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion, are relevant to an assessment of exigency." *Id.* at 1562-63. "That is particularly so in this context, where BAC evidence is lost gradually and relatively predictably." *Id.* at 1563. The Court concluded with the following: "In short, while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*, *it does not do so categorically*." *Id.* (emphasis added). "Whether a warrantless blood test of a drunk-driving suspect is reasonable *must be determined case by case based on the totality of the circumstances*." *Id.* (emphasis added).

In considering the totality of circumstances in its case, the *McNeely* Court noted that the State had relied on a *per se, categorical* approach and had not created a record supporting exigency

in this particular case. "In his testimony before the trial court, the arresting officer did not identify any other factors that would suggest he faced an emergency or unusual delay in securing a warrant." *Id.* at 1567. "He testified that he made no effort to obtain a search warrant before conducting the blood draw even though he was 'sure' a prosecuting attorney was on call and even though he had no reason to believe that a magistrate judge would have been unavailable." *Id.* "The officer also acknowledged that he had obtained search warrants before taking blood samples in the past without difficulty." *Id.* "He explained that he elected to forgo a warrant application in this case only because he believed it was not legally necessary to obtain a warrant." *Id.* The Court noted that factors present "such as the procedures in place for obtaining a warrant or the availability of a magistrate judge, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search." *Id.* at 1568. "The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case." *Id.*

The Court reasoned that "[b]ecause this case was argued on the broad proposition that drunk-driving cases present a *per se* exigency, the arguments and the record do not provide the Court with an adequate analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant." *Id.* The Court concluded with its holding that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id.*

***C. In light of* McNeely*, Texas's implied consent and mandatory blood draw statutory scheme cannot be considered an exception to the Fourth Amendment's warrant requirement.***

We must now consider the effect the Supreme Court's decision to remand *Aviles* in light of *McNeely* has on our holding in *Aviles* that a warrantless blood draw of a DWI suspect, which was conducted according to the prescriptions of the Transportation Code, does not violate the suspect's rights under the Fourth Amendment. This determination necessarily affects the result in this case.

The State urges that the facts of *McNeely* differ from those presented in *Aviles*. Indeed, there are factual distinctions to be made between *Aviles* and *McNeely*. *Aviles* concerned Texas's implied consent and mandatory blood draw statutes while *McNeely* concerned the exigency exception to the warrant requirement. And, before *Aviles* was vacated and remanded in light of *McNeely*, many courts of appeal had made such a factual distinction, holding that because *McNeely* concerned the exigency exception, it was not applicable to the implied consent and mandatory blood draw statutes. *See Reeder v. State*, No. 06-13-00126-CR, 2014 WL 60162 (Tex. App.—Texarkana Jan. 8, 2014, reh'g granted) (reasoning that *McNeely* did not apply to mandatory blood draw statute because *McNeely* dealt with the exigent circumstances exception to the warrant requirement); *Smith v. State*, No. 13-11-00694-CR, 2013 WL 5970400 (Tex. App.—Corpus Christi Oct. 13, 2013, op. withdrawn & appeal resubmitted) (reasoning *McNeely* did not invalidate Texas's implied consent statute but merely clarified the exigency exception). Once *Aviles* was remanded in light of *McNeely*, these courts decided to reconsider their previous opinions. *See Reeder*, 2014 WL 60162 (motion for rehearing granted); *Smith*, 2013 WL 5970400 (opinion withdrawn and appeal resubmitted). We conclude that *McNeely*'s prohibition on *per se, categorical* exceptions to the Fourth Amendment's warrant requirement did not solely apply to the exigency exception, but also applies to the facts presented in *Aviles*.

One of our sister courts has recently come to the same conclusion. In *Sutherland v. State*, No. 07-12-00289-CR, 2014 WL 1370118, at *1-2 (Tex. App.—Amarillo Apr. 7, 2014, no pet. h.), the appellant was arrested for DWI and taken for a warrantless blood draw pursuant to section 724.012(b)(3)(B) of the mandatory blood draw statute. The appellant argued that regardless of section 724.012(b)(3)(B)'s mandatory language, the Fourth Amendment requires that a warrantless search be supported by an established exception to the warrant requirement. *Id.* at *2. The Amarillo Court of Appeals noted that some courts of appeal "had relied on the implied-consent principles in *Aviles* to distinguish the exigent-circumstances principles of *McNeely* from those cases at bar examining mandatory blood draws under section 724.012(b)(3)(B)." *Id.* at *8. It emphasized that such reliance on *Aviles* ended when it was vacated and remanded for further consideration in light of *McNeely*. *Id.* From the Supreme Court's action, the Amarillo Court of Appeals concluded that distinguishing *McNeely* based on the fact that it involved exigent circumstances and not a mandatory blood draw statute was no longer a viable position. *Id.* The court of appeals reasoned that "[b]y vacating and remanding *Aviles*, it would seem that the United States Supreme Court has rejected any position that would treat section 724.012(b)(3)(B) as an exception to the Fourth Amendment, separate and apart from the traditional, well-established exceptions." *Id.* The court concluded that "regardless of the mandatory tone of section 724.012(b)(3)(B)'s directive to officers, it appears there must still be exigent circumstances that would justify a warrantless search of the suspect's blood." *Id.*

Similarly, the Corpus Christi Court of Appeals held in *State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, no pet. h.), that while the mandatory blood draw statute "required the officer to obtain a breath or blood sample, it did not require the officer to do so without first obtaining a warrant." The court noted that the mandatory blood draw statute "does not address or purport to dispense with the Fourth

- 13 -

Amendment's warrant requirement for blood draws." *Id.* The court further stressed that neither the Supreme Court nor the Texas Court of Criminal Appeals had "recognized the repeat offender provision of the mandatory blood draw law . . . as a new exception to the Fourth Amendment's warrant requirement separate and apart from the consent exception and the exception for exigent circumstances." *Id.* Thus, the court concluded "that the constitutionality of the repeat offender provision of the mandatory blood draw law must be based on the previously recognized exceptions to the Fourth Amendment's warrant requirement." *Id.*

We agree with both the Amarillo and the Corpus Christi Court of Appeals that the implied consent and mandatory blood draw statutes are not exceptions to the Fourth Amendment's warrant requirement. The State urges that we balance the public and private interests that are implicated in serious DWI cases and find that Texas's mandatory blood draw statute, section 724.012(b), is a reasonable substitute for the Fourth Amendment's warrant requirement. *McNeely*, however, clearly proscribed what it labeled *categorical* or *per se* rules for warrantless blood testing, emphasizing over and over again that the reasonableness of a search must be judged based on the totality of the circumstances presented in each case. *See McNeely*, 133 S. Ct. at 1560-63. Texas's implied consent and mandatory blood draw statutes clearly create such categories or per se rules that the Supreme Court proscribed in *McNeely*. *See* TEX. TRANSP. CODE ANN. §§ 724.011(a), 724.012(b). These statutes do not take into account the totality of the circumstances present in each case, but only consider certain facts. *See id.* Thus, we hold that the implied consent and mandatory blood draw statutory scheme found in the Transportation Code are not exceptions to the warrant requirement under the Fourth Amendment. To be authorized, the State's warrantless blood draw of Weems must be based on a well-recognized exception to the Fourth Amendment.

### D. Did exigent circumstances justify the warrantless blood draw?

As an alternative argument, the State also argues that exigent circumstances existed in this case to support the warrantless blood draw under the totality of the circumstances. We disagree. As in *McNeely*, this record does not support exigent circumstances, as this record was based on the officer relying on the mandatory blood draw and implied consent statutes to authorize the blood draw. *See McNeely*, 133 S. Ct. at 1567 (explaining because the State had relied on a *per se* approach, "the arresting officer did not identify any other factors that would suggest he faced an emergency or unusual delay in securing a warrant"). The State argues that because this case involved an accident, these facts are like those found permissible in *Schmerber*. However, as noted in *McNeely*, much technological advancement has occurred since *Schmerber* was decided in 1966. *See McNeely*, 133 S. Ct. at 1561-62. In this case, the arresting officer testified that (1) he made no effort to obtain a warrant; (2) there were other officers present at the scene; (3) there was an accident, (4) the passenger was injured and taken to the hospital, and (5) the driver also complained of being injured and was taken to the hospital. The officer testified that because the hospital was busy with accident victims that night, it took three hours for blood to be drawn from Weems. The record also reflects that Weems was arrested in San Antonio, a large city. The record, however, does not reflect other factors that would be relevant under the totality of the circumstances, including "procedures in place for obtaining a warrant or the availability of a magistrate judge" and "the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence." *McNeely*, 133 S. Ct. at 1568. Therefore, this record does not show that under the totality of the circumstances, the warrantless blood draw was justified by the exigency circumstances exception to the Fourth Amendment's warrant requirement.

### E.  Good Faith of Officer

Finally, the State argues that the evidence should not be excluded pursuant to the federal exclusionary rule or pursuant to article 38.23 of the Texas Code of Criminal Procedure because the arresting officer relied on the implied consent statute and mandatory blood draw statute in good faith. Under the federal exclusionary rule, if a law enforcement officer relies in good faith on a statute authorizing his warrantless search and the statute is later determined to be unconstitutional, the exclusionary rule does not apply. *Illinois v. Krull*, 480 U.S. 340, 342, 355 (1987). However, constraints do apply to the exception to the exclusionary rule. "A statute cannot support objectively reasonable reliance if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws." *Id.* at 355. "Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional." *Id.*

First, we note that the implied consent and mandatory blood draw statutes do not explicitly provide for a warrantless search. *See Villarreal*, 2014 WL 1257150, at * 11 (explaining that the mandatory blood draw statute "does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws"). Second, we note that there is no such good faith exception found in Texas's exclusionary rule – and Texas can provide more protection to a suspect than federal law. Article 38.23 provides for an exception to the exclusionary rule only when an officer relies in good faith *upon a warrant* issued by a neutral magistrate based on probable cause. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(b) (West 2005). It says nothing about an officer's reliance in good faith on a statute. Therefore, we hold that the exclusionary rule applies in this case.

*F. Harm*

Because the warrantless mandatory blood draw violated Weems's rights under the Fourth Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a). The jury was instructed the following in this case:

> "Intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; *or having an alcohol concentration of 0.08 or more*.

(emphasis added). Veronica Hargrove of the Bexar County Medical Examiner's Office testified that Weems's blood ethanol concentration was 0.18 grams per deciliter at 2:30 a.m. According to Hargrove, on average, a person who was at 0.18 at 2:30 a.m. and did not drink any more alcohol would have a blood ethanol concentration of 0.24 at 11:30 p.m. Hargrove testified that because Weems took his last drink at around 11:30 p.m. and his blood was drawn at 2:30 a.m., if he "only had a couple of drinks at 11:30 p.m., it would be unlikely that [he was] below 0.08" at the time of the accident. Given this testimony and the jury's instruction, we cannot determine beyond a reasonable doubt that the error did not contribute to Weems's conviction.

## CONCLUSION

Because the warrantless blood draw violated Weems's rights under the Fourth Amendment and because we cannot determine beyond a reasonable doubt that the erroneous admission of the results of the blood draw did not contribute to his conviction, we reverse the judgment of the trial court and remand the cause for a new trial.

Karen Angelini, Justice

PUBLISH