

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00002-CR

Ray Lee **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 12-03-0066-CRA
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Marialyn Barnard, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed: August 26, 2015

AFFIRMED

In two issues, appellant Ray Lee Garcia challenges his convictions arising from a fatal automobile accident. A jury convicted Garcia of two counts of intoxication manslaughter and one count of intoxication assault. The trial court sentenced Garcia to twenty-five years' confinement on the intoxication manslaughter counts and eighteen years' confinement on the intoxication assault count. On appeal, Garcia contends: (1) the trial court erred in admitting the results of a warrantless blood draw, which was conducted pursuant to section 724.012(b) of the Texas Transportation Code; and (2) his trial counsel was ineffective. We affirm.

## BACKGROUND

On the evening in question, an Atascosa County Sheriff's Department dispatcher received a 911 call from a distressed woman, who stated she was in a white Cadillac travelling northbound on IH-37 around mile marker 112. The caller told the dispatcher she had been hit in the eye by the driver and was afraid. The call then went silent. Shortly thereafter, the dispatcher received a second 911 call reporting a major accident on IH-37 around mile marker 114 involving a white Cadillac and an SUV. Officers were dispatched to the accident scene.

Texas Department of Public Safety Trooper Waylon Rogers was one of the first officers to arrive at the scene. Trooper Rogers testified it "was like a war zone." He found two vehicles, the white Cadillac and a Yukon Denali, upside down in a bar ditch off the roadway and "car parts and stuff from the car all over the roadways." Trooper Rogers testified that after conducting an accident investigation, he concluded the white Cadillac caused the accident. According to Trooper Rogers, the white Cadillac was travelling northbound on IH-37 at a high rate of speed, crossed over the median, and struck the oncoming Yukon Denali head on. The white Cadillac rolled over the Yukon Denali's roof and landed upside down. Both occupants of the white Cadillac, Garcia and Patricia Pena, were ejected from the vehicle and were discovered lying on the ground.

Trooper Rogers further testified that when he arrived, emergency personnel were treating the driver and passenger of the Yukon Denali, each of whom had, by that time, been removed from the vehicle. Emergency personnel were also treating Garcia, who was lying unconscious on the ground. Trooper Rogers indicated that after he investigated the scene, he examined Garcia. According to Trooper Rogers, Garcia was found lying closer to the white Cadillac than Ms. Pena and Garcia had wrist injuries; as a result, Trooper Rogers concluded Garcia, not Ms. Pena, was the driver of the white Cadillac. Trooper Rogers also testified that when he kneeled down to examine Garcia's injuries, Garcia smelled like alcohol, suggesting he was driving while intoxicated.

Trooper Rogers added that because the white Cadillac skidded across the roadway when Garcia lost control of the vehicle, he believed Garcia was intoxicated at the time of the accident.

However, Trooper Rogers's report, which was prepared four days after the accident, did not correspond with his testimony at trial. In his report, Trooper Rogers indicated the driver of the white Cadillac was unknown and alcohol was not listed as a contributing factor. At trial, Trooper Rogers testified the discrepancies in the report were mistakes, claiming he had concluded at the scene that Garcia was the driver of the white Cadillac and was under the influence of alcohol when he caused the accident.

The passenger of the Yukon Denali and Ms. Pena died as a result of their injuries. Garcia, however, survived and was airlifted to the hospital. Trooper Rogers testified he requested a mandatory blood draw to be performed on Garcia as soon as he found out Garcia was being airlifted to the hospital for injuries he incurred from the accident. There is nothing in the record indicating Garcia was conscious when he was airlifted to the hospital or that Trooper Rogers spoke to him.

Texas Department of Public Safety Trooper Lonnie Baker testified he was on call when he received a dispatch for assistance. Trooper Baker stated he was asked to perform a mandatory blood draw on a person who was being airlifted to the hospital. When he arrived at the hospital Trooper Baker found Garcia was unconscious, and as a result, he "went straight to the 51, which is the mandatory blood draw [paperwork]" due to the fact intoxication, assault, and deaths were involved.[1] Neither Trooper Rogers, Trooper Baker, nor any other law enforcement officer

---

[1] Based on these underlying facts, it appears Trooper Rogers and Trooper Baker were relying upon section 724.012(b)(1)(A)-(C), which provides a peace officer shall require a blood or breath specimen if a driver is arrested for driving while intoxicated after having been involved in an accident and as a result of the accident, another individual has died or will die, has suffered serious bodily injury, or has suffered bodily injury and been transported to a hospital or other medical facility for treatment. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(1)(A)-(C) (West 2011).

obtained a search warrant prior to mandating the blood draw. According to Trooper Baker, the blood draw was taken at 2:18 a.m.

Texas Department of Public Safety Crime Laboratory forensic scientist, Emily Bonvino, testified the results of that blood draw authorized by the troopers showed Garcia's blood alcohol level to be 0.12 grams per hundred milliliters of whole blood. Ms. Bonvino added that after extrapolating back to the time of the accident, Garcia's blood alcohol level would have been between 0.145 and 0.196 grams per hundred milliliters of whole blood. The legal limit in Texas is 0.08 grams per hundred milliliters of whole blood.

In addition to the blood draw taken at the request of the troopers, hospital personnel performed two blood draws later that morning for medical purposes. These samples were not analyzed by the Texas Department of Public Safety crime laboratory. However, Garcia's hospital records, which were admitted into evidence without objection, revealed that the blood alcohol concentration in the samples drawn from Garcia at 2:52 a.m. and 3:32 a.m. were 0.223 and 0.209 grams per hundred milliliters of whole blood, respectively. At trial, Ms. Bonvino testified the Department of Public Safety utilized different standards than the hospital, explaining why the results varied. Nevertheless, she believed Garcia was intoxicated at the time of his arrest.

Ultimately, Garcia was arrested and charged with two counts of intoxication manslaughter and one count of intoxication assault. Garcia filed a pretrial motion to suppress the testimony of Ms. Bonvino, objecting to the relevancy and reliability of Ms. Bonvino's testimony. No other motions were filed, and a suppression hearing was not held. At trial, Garcia objected to the admission of the blood alcohol results from the blood draw authorized by Trooper Rogers. The trial court overruled Garcia's objection and admitted the blood alcohol results of the blood draw. Garcia was ultimately convicted, and thereafter, he perfected this appeal.

ANALYSIS

***Blood Results***

In his first issue, Garcia contends his blood alcohol test results were illegally obtained, and therefore, were inadmissible at trial. Specifically, Garcia argues the trial court abused its discretion in admitting his blood alcohol test results because: (1) his blood sample was taken before he was formally arrested in violation of section 724.012(b)(1) of the Texas Transportation Code, and (2) his blood sample was taken without a warrant in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures as set out in *Missouri v. McNeely*, __ U.S. __, 133 S. Ct. 1552 (2013).

In response, the State argues that whether an arrest occurred to satisfy the requirements of section 724.012(b) was a fact question for the jury to determine. And, even if the blood draw was impermissible under section 724.012(b), exigent circumstances existed, justifying a lawful seizure of Garcia's blood sample without a warrant. Therefore, the trial court did not abuse its discretion in admitting the blood alcohol test results.

*Standard of Review*

We review a trial court's ruling on whether to admit or exclude evidence under an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Under this standard, we will reverse a trial court's decision only if it lies outside the zone of reasonable disagreement. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). However, we will uphold a trial court's decision so long as it is supported by the record and is correct under any theory of applicable law. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

*Application*

Here, we need not determine whether an arrest occurred as required under section 724.012(b). *See* TEX. TRANSP. CODE ANN. § 724.012(b); *State v. Mosley*, 348 S.W.3d 435, 442 (Tex. Crim. App. 2011) ("[B]y its own terms, section 724.012(b) applies only when an officer arrests a suspect[.]"). Even assuming Garcia was arrested for the purposes of section 724.012(b), Garcia's next argument raises concerns regarding whether the warrantless blood draw was permissible in light of the Supreme Court's decision in *McNeely*.

In several recent cases, this court analyzed *McNeely*, concluding section 724.012(b) does not constitute a valid exception to the warrant requirement of the Fourth Amendment. *See, e.g.*, *Huff v. State*, No. 04-13-00891-CV, 2015 WL 1731236, at \*14 (Tex. App.—San Antonio Apr. 8, 2015, pet. filed); *Aviles v. State*, 443 S.W.3d 291, 294 (Tex. App.—San Antonio 2014, pet. filed); *McNeil v. State*, 443 S.W.3d 295, 300 (Tex. App.—San Antonio 2014, pet. filed); *Weems v. State*, 434 S.W.3d 655, 665 (Tex. App.—San Antonio 2014, pet. granted). Section 724.012(b), also known as the mandatory blood draw statute, provides in relevant part that "[a] peace officer shall require the taking of a specimen of the person's breath or blood under any of the [listed] circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily." TEX. TRANSP. CODE ANN. § 724.012(b). Analyzing this section in light of *McNeely*, this court held *McNeely* "clearly proscribed what it labeled *categorical* or *per se* rules for warrantless blood testing, emphasizing over and over again that the reasonableness of a search must be judged based on the totality of the circumstances presented in each case." *Weems*, 434 S.W.3d at 665. Accordingly, when faced with cases raising *McNeely* concerns, we have held the mandatory blood draw statute is the very type of categorical or per se rule rejected by the Supreme Court in *McNeely*. *See Huff*, 2015 WL 1731236, at \*14;

*Aviles*, 443 S.W.3d at 294; *McNeil*, 443 S.W.3d at 300; *Weems*, 434 S.W.3d at 665. Section 724.012(b) does not utilize a totality of the circumstances analysis as required by *McNeely*, and instead considers only certain facts when authorizing a blood draw. *Weems*, 434 S.W.3d at 665. Accordingly, the mandatory blood draw statute, although not unconstitutional per se, is not a valid exception to the Fourth Amendment's warrant requirement. *See Huff*, 2015 WL 1731236, at \*14; *Aviles*, 443 S.W.3d at 294; *McNeil*, 443 S.W.3d at 300; *Weems*, 434 S.W.3d at 665. Therefore, based on the analyses and holdings in our prior opinions, we hold section 724.012(b), without more, cannot serve as authority upon which to admit Garcia's blood alcohol test results. *See Huff*, 2015 WL 1731236, at \*14; *Aviles*, 443 S.W.3d at 294; *McNeil*, 443 S.W.3d at 300; *Weems*, 434 S.W.3d at 665. We again hold that *McNeely* requires the existence of a recognized exception to the warrant requirement before a police officer can order a warrantless, nonconsensual blood draw pursuant to section 724.012(b).

As noted above, the State contends there is evidence of a recognized exception to the warrant requirement. According to the State, exigent circumstances existed, justifying a lawful seizure of Garcia's blood sample without a warrant. We disagree. Exigency is a well-established exception to the warrant requirement. *McNeely*, 133 S. Ct. at 1559. According to the Supreme Court, there are numerous circumstances that may permit a warrantless search based on exigent circumstances, including the imminent destruction of evidence. *Id.* However, it is clear from *McNeely* that the natural dissipation of alcohol alone will not necessarily support a finding of exigent circumstances. *Id.* at 1560. Rather, there must be some other facts that show exigent circumstances exist. *Id.* We review the evidence presented to the trial court to determine whether, under a totality of the circumstances, the State proved the existence of exigent circumstances so as to permit a warrantless blood draw. *Id.*

Here, the record does not support the existence of exigent circumstances; it appears, as in *McNeely* and *Weems*, the officer relied solely on section 724.012(b) to authorize a warrantless blood draw. *See McNeely*, 133 S. Ct. at 1559; *Weems*, 434 S.W.3d at 665. Although the State argues that the severity of the accident, the injuries of the parties, and the uncertainty surrounding whether Garcia would need surgery established the existence of exigent circumstances, we disagree. At trial, Trooper Rogers did not testify he was concerned that Garcia would be sent to surgery; instead, it seems he never thought to obtain a warrant. According to Trooper Rogers, he merely ordered a blood draw because he suspected Garcia was driving while intoxicated. In fact, during trial, none of the officers involved were asked about exigent circumstances to justify securing Garcia's blood without a warrant. Instead, the only testimony regarding the timing of the blood draw came from Ms. Bonvino, who indicated taking the blood draw at different times could explain the discrepancy between the blood results based on her analysis and the blood results in the hospital records. This testimony sheds no light on whether the officers were presented with exigent circumstances when they decided to draw Garcia's blood without a warrant.

Moreover, neither Trooper Rogers nor Trooper Baker testified as to whether there would be any procedures or obstacles in place to prevent them from obtaining a warrant. Rather, the record reflects Trooper Rogers requested the blood draw around 11:45 p.m. and the blood draw was taken around 2:18 a.m. Just as we noted in *Weems*, "the record . . . does not reflect other factors that would be relevant under the totality of the circumstances, including 'procedures in place for obtaining a warrant or the availability of a magistrate judge' and 'the practical problems of obtaining a warrant within a time frame that still preserves the opportunity to obtain reliable evidence.'" 434 S.W.3d at 666 (citing *McNeely*, 133 S. Ct. at 1568). Accordingly, we hold that considering the totality of the circumstances, the evidence does not support the existence of exigent circumstances so as to justify a warrantless seizure of Garcia's blood. *Id.* As a result, we hold

Garcia's blood was illegally obtained by the troopers, and therefore, it was inadmissible. Consequently, the trial court abused its discretion in admitting Garcia's trooper obtained blood results.

*Harmless Error Analysis*

Having concluded the trial court erred in admitting Garcia's blood test results, we must now determine whether the error entitles Garcia to a reversal. *See* TEX. R. APP. P. 44.2(a). We hold the error in admitting Garcia's blood results into evidence does not constitute reversible error under Texas Rule of Appellate Procedure 44.2(a). *Id.*

Pursuant to Rule 44.2(a), when the trial court's error is one of constitutional magnitude, we must reverse the judgment unless we determine beyond a reasonable doubt the trial court's error did not contribute to the conviction. TEX. R. APP. P. 44.2(a); *see Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001) (holding harm analysis for erroneous admission of evidence obtained in violation of Fourth Amendment is Rule 44.2(a)'s constitutional standard). As a result, we must reverse Garcia's conviction unless we conclude beyond a reasonable doubt the trial court's error did not contribute to his conviction. *See* TEX. R. APP. P. 44.2(a); *Hernandez*, 60 S.W.3d at 108.

In making this determination, we consider: (1) the nature of the error; (2) the extent it was emphasized by the State; (3) the probable implications of the error; and (4) the weight the jury likely assigned to it during deliberations. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). These factors are not exclusive and other factors may be relevant to the analysis. *Id.* Moreover, the improper admission of evidence is harmless if similar evidence was admitted without objection. *See Hamilton v. State*, 399 S.W.3d 673, 684 (Tex. App.—Amarillo 2013, pet. ref'd) (citing *Saldano v. State*, 232 S.W.3d 77, 102 (Tex. Crim. App. 2007)).

Here, the jury was instructed that the definition of "intoxicated" included having a blood alcohol concentration of 0.08 or more. To prove Garcia was driving while intoxicated, the State relied on testimony from forensic scientist, Ms. Bonvino. According to Ms. Bonvino, the blood draw requested by the troopers showed Garcia's blood alcohol level to be 0.12 grams per hundred milliliters of whole blood, well over the legal limit of 0.08. Ms. Bonvino also testified that after extrapolating back to the time of the accident, Garcia's blood alcohol level would have been between 0.145 and 0.196 grams per hundred milliliters, evidencing Garcia was driving while intoxicated.

However, unlike the cases in which this court held the erroneous admission of blood alcohol test results constituted harmful error, the State in this case produced, and the trial court admitted into evidence without objection, other evidence establishing Garcia's blood alcohol level was above the legal limit. *See Huff*, 2015 WL 1731236, at *17-*18; *Weems*, 434 S.W.3d at 667. At trial, the State produced, and the trial court admitted into evidence, blood alcohol test results obtained from two different blood draws taken from Garcia by the hospital staff for medical purposes, i.e., for treatment purposes. The record reflects hospital staff took two blood draws from Garcia *after* Trooper Baker received the blood draw requested by Trooper Rogers. The hospital blood draws indicated Garcia's blood alcohol levels were 0.223 and 0.209 grams per hundred milliliters of whole blood, both well over the legal limit.[2] The State also referenced these blood draws during its closing argument. As a result, we are presented with a situation in which similar evidence – the blood draws taken by the hospital – was admitted elsewhere without objection. Accordingly, any error the trial court committed in admitting the blood draw results ordered by

---

[2] The dissent contends Garcia's medical records do not show Garcia's actual blood alcohol results. In the most technical sense, the dissent is correct. However, the dissent ignores the fact that at trial, Ms. Bonvino used the ethanol levels stated in the medical records to establish Garcia's blood alcohol concentration levels — 0.223 and 0.209. Garcia objected neither to the admission of the medical records nor Ms. Bonvino's testimony in this regard.

the troopers was harmless because the blood draws taken independently by hospital staff established Garcia was intoxicated.[3] *See Hamilton*, 399 S.W.3d at 684.

### *Ineffective Assistance of Counsel*

In his second issue, Garcia argues his trial counsel provided ineffective assistance. Specifically, Garcia contends his trial counsel was ineffective because: (1) he failed to move to suppress or object at trial to the admission of his blood results obtained from the warrantless blood draw authorized by Trooper Rogers; (2) he did not conduct any meaningful cross-examination of Ms. Bonvino regarding the reliability of her retrograde extrapolation analysis; and (3) he failed to object to the admission of the blood test results obtained from the blood draws taken by the hospital staff for treatment purposes.

### *Standard of Review*

The United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (West Supp. 2014). This right includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S .W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, an appellant must show: (1) trial counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that the result of the

---

[3] Similarly, the Amarillo Court of Appeals has held the admission of blood alcohol results obtained from a warrantless blood draw was not harmful error when blood alcohol results based on blood draws authorized by the hospital for medical purposes were admitted into evidence. *See Baker v. State*, No. 07-14-00161-CR, 2015 WL 1518956, at *1 (Tex. App.—Amarillo March 31, 2015, no pet.) (per curiam) (not designated for publication) (holding defendant does not have reasonable expectation of privacy in – and thus lacks standing to complain about – blood alcohol results based on blood draws taken by hospital for medical purposes). We note that contrary to the dissent's assertion, we do not rely upon the Amarillo court's decision or reasoning in *Baker* in determining the complained of error was harmless. Rather, we rely upon well-established precedent, including authority from the court of criminal appeals, which has held that when similar evidence is admitted elsewhere without objection, any error in the admission of the "objected to" evidence is harmless. *See Hamilton*, 399 S.W.3d at 686 (citing *Saldano*, 232 S.W.3d at 102); *See also, e.g., Sandoval v. State*, 409 S.W.3d 259 (Tex. App.—Austin 2013, no pet) (citing *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986)); *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–92. Furthermore, the appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

When determining whether trial counsel was ineffective, we indulge a strong presumption that trial counsel's conduct fell within a wide range of reasonable representation. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). We also presume trial counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

When, as here, there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). It should be a rare case in which an appellate court finds ineffective assistance on a record that is silent as to counsel's trial strategy. *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). On a silent record, this court can find ineffective assistance of counsel only if the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

*Application*

Garcia did not file a motion for new trial. With that and the foregoing principles in mind, we turn to Garcia's first ineffective assistance of counsel contention.

Garcia initially contends his trial counsel was ineffective because he did not challenge the admission of the blood alcohol test results obtained as a result of the blood draw authorized by Trooper Rogers. Garcia is correct in that his trial counsel did not file a motion to suppress these blood alcohol test results. Nevertheless, he objected at trial to the admission of the results. As discussed above, we construed Garcia's trial objections regarding the admissibility of the blood

alcohol test results to be twofold: statutory and constitutional. Construing Garcia's objection at trial as falling within the confines of a *McNeely* analysis, we applied *McNeely* and ultimately concluded the trial court abused its discretion in admitting the illegally obtained evidence; however, we held such error was harmless.

Accordingly, we conclude Garcia's trial counsel provided effective assistance with regard to his challenge to the blood draw results taken at the trooper's request — he objected at trial on a basis that specifically permitted this court to review whether the trial court erred in admitting the blood alcohol results. Based on the foregoing, we cannot say trial counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 688–92.

Turning to Garcia's second claim of ineffective assistance, he contends his trial counsel failed to conduct a meaningful cross-examination of Ms. Bonvino with regard to the reliability of the retrograde extrapolation analysis she performed on the blood draw authorized by Trooper Rogers. However, as noted above, Garcia did not file a motion for new trial in which he challenged the effectiveness of his trial counsel. As a result, Garcia failed to produce any evidence to support his ineffectiveness claim, and his trial counsel had no opportunity to explain or justify the complained-of conduct. *See Bone*, 77 S.W.3d at 833 (highlighting counsel should be afforded opportunity to explain actions before being condemned as unprofessional and incompetent). Thus, we are faced with a record that is silent as to trial counsel's possible reasoning or strategy, meaning Garcia failed to sustain his burden to prove counsel's actions fell below an objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 688–92; *Andrews*, 159 S.W.3d at 103; *Bone*, 77 S.W.3d at 833.

Furthermore, cross-examination itself is inherently risky, and an attorney's decision regarding whether to cross-examine a witness is matter of trial strategy. *See Strickland*, 466 U.S.

at 697–99; *Ex Parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005). When faced with a silent record regarding trial counsel's strategy, we presume trial counsel followed an appropriate trial strategy. *Strickland*, 466 U.S. at 689; *Jackson*, 877 S.W.2d at 771. Accordingly, because the record is silent as to the reasons for trial counsel's decision to cross-examine Ms. Bonvino in a certain manner, we hold Garcia failed to rebut the presumption that his trial counsel's actions were a result of reasonable trial strategy and prove by a preponderance of the evidence that his counsel was ineffective in this regard. *See Strickland*, 466 U.S. at 689; *McFarland*, 163 S.W.3d at 756; *Jackson*, 877 S.W.2d at 771.

As to Garcia's final contention, he argues trial counsel was ineffective because he failed to object to the admission of the results of the two hospital blood draws, which were taken for medical purposes and independent of the blood draw authorized by the trooper. However, the failure to object to potentially inadmissible evidence does not necessarily constitute ineffective assistance of counsel. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992); *Castoreno v. State*, 932 S.W.2d 597, 603 (Tex. App.—San Antonio 1996, pet. ref'd). It is possible trial counsel's failure to object was a result of trial strategy — here, counsel had already objected to the blood alcohol test results obtained from the blood draw authorized by the troopers; perhaps trial counsel thought another objection would highlight the results or make Garcia seem as if he were hiding information from the jury. *See Bollinger v. State*, 224 S.W.3d 768, 781 (Tex. App.—Eastland 2007, pet. ref'd) ("Counsel can be concerned that too many objections will alienate a jury or that an objection might draw unwanted attention to a particular issue."). And, as noted above, there is nothing in the record to illuminate trial counsel's rationale regarding the complained-of failure to object, and we cannot speculate on trial counsel's motives. *See Jackson*, 877 S.W.2d at 771; *Bollinger*, 224 S.W.3d at 781. Thus, because the record is silent as to trial counsel's decision not to object, we again hold Garcia has failed to rebut the presumption that counsel acted reasonably

or prove by a preponderance of the evidence that counsel's actions were ineffective. *See Strickland*, 466 U.S. at 689; *Jackson*, 877 S.W.2d at 771; *Bollinger*, 224 S.W.3d at 781.

Given the foregoing analysis, we hold Garcia's trial counsel either acted appropriately or Garcia failed to rebut the presumption trial counsel's actions were reasonable trial strategy. Garcia did not establish by a preponderance of the evidence that trial counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392; *Andrews*, 159 S.W.3d at 103.

## CONCLUSION

Although the trial court erred in admitting the results from the blood draw ordered by Trooper Rogers and obtained by Trooper Baker, such error was harmless given the admission of the unobjected-to hospital records, which confirmed Garcia was intoxicated. Moreover, Garcia's trial counsel was not ineffective for failing to file a motion to suppress, given his objection at trial was sufficient to permit this court to address Garcia's claim that the blood results obtained by the troopers were acquired in violation of his Fourth Amendment rights. As to Garcia's other claims of ineffective assistance, Garcia failed to sustain his burden to show by a preponderance of the evidence that counsel was ineffective, particularly given the absence of a motion for new trial and any hearing thereon. Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish