ACCEPTED
03-14-00588-CR
4737233
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/1/2015 7:07:19 PM
JEFFREY D. KYLE
CLERK

## CAUSE NO. 03-14-00588-CR

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/1/2015 7:07:19 PM
JEFFREY D. KYLE
Clerk

*In The*

*Court Of Appeals*

*Third District Of Texas*

*Austin, Texas*

---

| | | |
|---|---|---|
| STATE OF TEXAS | § | APPELLANT |
| | § | |
| HECTOR MARTINEZ | § | APPELLEE |

---

### APPEAL FROM THE 427TH JUDICIAL DISTRICT COURT

### TRAVIS COUNTY, TEXAS

### CAUSE NO. D-1-DC-13-900228

---

### DEFENDANT'S BRIEF

---

John N. de la Viña
Attorney and Counselor at Law
State Bar No. 24078407
702 Rio Grande
Austin, Texas 78701
512.897.3325
Fax 512.501.6307
Delavina.law@gmail.com
www.delavinalaw.com

*Oral argument is requested*

## Identity of Parties and Counsel

Trial Judge:
**Jim Coronado**
427th Judicial District Court
P.O. Box 1748
Austin, Texas 78767

**Leon (Leo) Grizzard**
Magistrate Judge
P.O. Box 1748
Austin, Texas 78767

Trial Counsel for the State:
**Kelley Geir and Willis Chambers**
Travis County District Attorney's Office
P.O. Box 1748
Austin, Texas 78767

Defendant / Appellee:
**Hector Martinez**

Counsel for
Defendant/Appellee:
**John N. de la Viña**
702 Rio Grande
Austin, Texas 78701

i

# Table of Contents

Identity of Parties and Counsel.................................................................. i

Index of Authorities...........................................................................iii, iv

Statement of the Case...............................................................................v

Statement of Facts....................................................................................2

Summary of the Defendant's Argument.......................................................6

Argument.................................................................................................7

Point One: The circumstances surrounding the Defendant's behavior and medical intervention did not objectively rise to the standard of true exigency.................................................................................................8

Point Two: The mandatory blood draw statute does not circumvent the 4th Amendment's requirement for a warrant.......................................16

Point Three: A person has an absolute right to refuse a test and it is explicit that implied consent is not an exception to the 4th Amendment's requirement for a warrant.............................................19

Point Four: *McNeely* applies retroactively, the State ignores the standard of review, and the State's Point Four can be distinguished..21

Point Five: Good faith under the federal exclusionary rule does not apply in the instant case ................................................................28

Prayer...................................................................................................29

Certificate of Compliance and Service..........................................................30

# Index of Authorities

**Cases**

*Bowman v. State*, 2015 WL 557205................................................22, 23

*Carmouche v. State*, 10 S.W.3d 323, 327-8 (Tex.Crim.App.2000).....26

*Cole v. State*, 2014 WL 7183859................................................23, 25

*Douds v. State*, 434 S.W. 3d 842 (Tex.App.-Houston [14th Dist.] 2014, pet. granted .............................................................................20, 23

*Griffith v. Kentucky*, 479 U.S. 314, 326-38, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)...........................................................................................25

*Gutierrez v. State*, 221 S.W. 3d 680, 685 (Tex.Crim.App.2007)..........9

*Holidy v. State*, No- 06-13-00261-CR, 2014 WL 1722171 (Tex.App.-Texarkana Apr. 30, 2014, pet granted) (mem. Op., not designated for publication)...................................................................................20

*Houghton v. Wyoming*, 526 U.S. at 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)..........................................................................................17

*Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L. Ed. 2d 364 (1987)............................................................................................28

*State v. Johnson*, 871 S.W.2d. 744, 750-51 (Tex. Crim. App. 1994)..26

*Maryland v. King*, __U.S.__, 133 S.Ct. 1958, 186 L. Ed. 2d 1 (2013).........................................................................................17, 18

*Missouri v. McNeely*, 569 U.S.____, 133 S. Ct. 1552, 1561, 185 L.Ed. 2d 696 (2013) ............................................4, 5, 14, 16, 18, 22, 23, 24

*Miller v. State*, 393 S.W. 3d 255, 266 (Tex.Crim.App.2012)..............20

*Reeder v. State*, 428 S.W.3d 924 (Tex.App.-Texarkana 2014, pet. granted)....................................................................................20

*Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)..................................................................................14, 15

*Schneckloth v. Bustamante*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)..................................................................................19, 20

*Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).........7

*Sutherland v. State*, 436 S.W.3d 842 (Tex.App-Amarillo 2014, no pet.)..................................................................................20

*Venn v. State*, 85 Tex.Crim. 633, 218 S.W. 1060 (1920).....................17

*State v. Villarreal*, No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014)................6, 7, 16, 18, 19, 20, 25

*Weems v. State*, 434 S.W.3d 655 (Tex.App.-San Antonio, pet. granted).................................................................................15, 20, 28

*Wehrenberg v. State*, 416 S.W.3d 458, 467-70 (Tex. Crim. App. 2013)..................................................................................26, 27

**Statutes**

Tex. Code. Crim. Proc. art. 38.23.......................................21, 22, 27, 28

Tex. Penal Code §49.04........./.........................................................v

Tex. Penal Code §49.09.......................................................................v

Tex. Transp. Code 724.002(b).......................................................5, 22

Tex Transp. Code §724.011(a)..................................................5, 19, 22

## Statement of the Case

A grand jury indicted the Defendant for driving while intoxicated with two prior convictions. CR3-4; Tex. Penal Code § 49.04, 49.09(b)(2). The trial court granted the Defendant's motion to suprres the blood test results, and State gave notice of appeal. CR 61-70. On December 31st, 2014, the State filed its brief in this case.

CAUSE NO. 03-14-00588-CR

*In The*

*Court Of Appeals*

*Third District Of Texas*

*Austin, Texas*

| | | |
|---|---|---|
| STATE OF TEXAS | § | APPELLANT |
| | § | |
| HECTOR MARTINEZ | § | APPELLEE |

APPEAL FROM THE 427TH JUDICIAL DISTRICT COURT

TRAVIS COUNTY, TEXAS

CAUSE NO. D-1-DC-13-900228

## DEFENDANT'S BRIEF

To the Honorable Third Court of Appeals:

Now Comes the Defendant, Hector Martinez, and files this brief, and in support thereof respectfully shows the following:

## Statement of Facts

On March 15th, 2013, at around 12:25 a.m. APD Officer Marcos Johnson was dispatched to 10108 Shinnecock Hills Drive, to investigate a potential prowler. 2RR 9, 12, 29. Officer Johnson arrived at the scene roughly 10 minutes after the initial 911 call. 2RR 13-14. Upon arrival Officer Johnson observed Defendant in the driver's seat of a sports utility vehicle being confronted by a neighborhood security guard. RR 13-14, 21, 74. Officer Johnson then approached Defendant and detained him in handcuffs. 2RR 15. Officer Johnson admitted that prior to approaching Defendant he determined the basis of the call was not violent in nature. 2RR 48.

After detaining Defendant Officer Johnson observed Defendant exhibiting potential signs intoxication. 2RR 17-18, 30. As a result of his observations, around 12:41 a.m., Officer Johnson administered Standardized Field Sobriety Tests (SFSTs) on Defendant as part a DWI investigation. 2RR 29. After administering the SFSTs, at around 1:00 a.m., Officer Johnson placed Defendant under arrest for Driving While Intoxicated. 2RR 29. Once under arrest Officer Johnson read Defendant his DIC-24 statutory warnings, to which Defendant refused to provide or consent to the taking of his breath or blood. 2RR 31.

*State v. Martinez*      2
*APPELLATE CAUSE NO. 03-14-00588-CR*

After arresting Defendant Officer Johnson took him to "a few places", before having his blood drawn. 2RR 30. Specifically, Officer Johnson and Defendant arrived to the APD BAT Bus[1] around 1:45 a.m., with the intent to turn Defendant over to the APD DWI Task Force for transport. 2RR 30-31, 63. While at the Bat Bus Officer Johnson discovered that Defendant had two prior DWI convictions. 2RR 30-31, 63. Due to Defendant's felony enhancement, Officer Johnson transported Defendant to the Travis County Jail for a mandatory blood draw that "had" to be administered. 2RR 37, 64.

Officer Johnson and Defendant arrived at the "Sally Port" located at APD's booking facility downtown at about 2:15 a.m. 2RR 67, 71. After arriving Officer Johnson observed Defendant acting strangely in the backseat of his patrol vehicle, noting that Defendant was nonresponsive and breathing in a peculiar manner. 2RR 30. Officer Johnson then called EMS to assess Defendant's condition, and out of precaution EMS determined Defendant should be transported to Breckenridge Hospital. 2RR 66-67. Before and during transport Defendant wrestled with Officer Johnson and EMS and was sedated by EMS as a result. 2RR 66-67. Dispatch records reflect that Officer Johnson and EMS were en route to Breckenridge with the

---

[1] Please note that Officer Johnson was unsure what the acronym "BAT" in the term BAT Bus stood for, stating verbatim, "I guess it's the blood alcohol testing bus." 2RR 62.

Defendant at around 3:00 a.m. 2RR 31, 67, 71. Defendant's blood was drawn at Breckenridge at approximately 3:34 a.m. Id. In total two and one-half (2 ½ ) hours elapsed from the moment the Defendant was arrested to the time he had his blood drawn at Breckenridge Hospital. 2RR 29, 31, 67, 71.

At the time of this investigation Officer Johnson had 5 months of experience with APD and prior to this incident never obtained a blood search warrant for DWI investigation. 2RR 33, 38-41. During the course of the investigation Officer Johnson lacked the intent to, and did not attempt acquire, a search warrant for the Defendant's blood. 2RR 36-37, 40, 59. Officer Johnson relied on "department policy" as the reason for his inaction. 2RR 37-38, 40, 59. Officer Johnson admitted that if he wanted to obtain a warrant to search the Defendant's blood that a magistrate would "to the best of his knowledge" be available to do so.[2] 2RR 36. Further, Officer Johnson stated that he was aware of alternative methods of obtaining search warrants in Travis County, particularly, via telephone. 2RR 58.

The Defendant filed a motion to suppress blood evidence, relying on the Fourth Amendment, due to a lack of warrant and a lack of a valid warrant exception. Supp. CR 4-6. The Defendant's arguments were Officer Johnson's lack of obtaining a warrant, even though he had ample time to do

---

[2] Officer Johnson's knowledge of obtaining blood search warrants was derived after this incident and after the Supreme Court's ruling in *McNeely*. 2RR 39.

so, precluded the evidence, and that the implied consent statute runs afoul the Fourth Amendment and the Supreme Court's ruling in *McNeely*. 3RR 7-8.

The State challenged the Defendant's motion arguing that the blood draw was justified under the exigent circumstances exception to the warrant requirement and that the statute that mandated the blood draw, Tex. Transp. Code § 724.002(b), is constitutionally reasonable under the Fourth Amendment. CR 45; 3RR7; CR40-44. That State also contended that the blood evidence was admissible due to the implied consent law per Tex. Transp. Code § 724.011(a). CR 40-41. Lastly, the State argued that the Texas exclusionary rule did not apply to the search, and the federal exclusionary rule did not bar the admission of the evidence, because of good faith reliance.

After hearing, the magistrate court held in favor of the Defendant suppressing the blood test for the following reasons; the situation posed by the medical intervention did not constitute true exigency, if admitted the blood test would override the Constitution's requirement for a search warrant, and implied consent does not qualify as an exception to the warrant requirement. CR 61-63.

The presiding judge signed and adopted the magistrate court's findings of fact and granted the motion to suppress the blood evidence. CR 64. The State appealed this decision. CR 65-70.

## Summary of the Defendant's Argument

**POINT ONE:** The circumstances surrounding the Defendant's behavior and medical intervention did not objectively rise to the standard of true exigency. Put simply, the Defendant was in custody for roughly two and a half hours (2 ½) and Officer Johnson never intended to, or attempted to, obtain a blood search warrant even though he roughly had two and a half hours to do so, relying solely on policy as reason for a warrantless search.

**POINT TWO:** Pursuant to the Court of Criminal Appeals ruling in *Villarreal*, and the rulings of many other Courts throughout Texas, it is explicit that the mandatory blood draw statute does not circumvent the 4th Amendment's requirement for a warrant. The State's point lacks merit.

**POINT THREE:** The Defendant never consented to the blood draw and a person has an absolute right to refuse a test and it is explicit that implied consent is **not** an exception to the 4th Amendment's requirement for a warrant.. The State's point lacks merit.

**POINT FOUR:** Texas statutes and recent case law does not carve out a de facto "good faith" exception when a police officer relies on a law that is later found to be unconstitutional.

**POINT FIVE:** Good faith under the federal exclusionary rule does not apply in this situation because Texas statute offers an individual more protection than its federal counterpart.

### Standard of Review

The appellate court reviews a ruling on a motion to suppress for an abuse of discretion. The appellate court views the facts in light most favorable to the trial court's decision. The appellate court reviews *de novo* the trial court's application of the law of search and seizure to those facts. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).

### Argument

The Texas Court of Criminal Appeals held that a warrantless blood draw conducted pursuant to a warrantless blood draw statute violates the 4th Amendment, when the warrantless search does not fall under an exception to the warrant requirement. The Court also found that implied consent refused by a suspect does not constitute free and voluntary consent under the Fourth Amendment. *State v. Villarreal,* No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014).

The State notes in its brief the arguments made in State's points Two and Three are directly contradicted by the ruling in *Villarreal*. For the sake of brevity Defendant will defer the to ruling in *Villarreal* regarding State's points Two and Three and asserts they are without merit. The Defendant's substantive focus will be on State's points, One, Four, and Five.

***Point One:*** *The exigent circumstance exception to the warrant requirement does not apply in this case.*

In the summary of its first argument the State articulates its point as follows, "exigent circumstances exception to the warrant requirement applies in this case ... not arguing solely based on the dissipation of alcohol in blood. Instead there was an actual medical emergency and combative defendant ... ate up time and the office away from the jail and magistrate."[3] State's Brief at 7.

### i. Exigent circumstances

The exigent circumstances exception to the warrant requirement does not apply in this case. In order for the exigent circumstances exception to the warrant requirement to trigger there typically must be one of the three

---

[3] The State in its summary seems to bootstrap true medical exigency with exigency based on the dissipation of blood in alcohol stating the situation was "an actual medical emergency" and the exigency is not "based solely on the dissipation of alcohol in the blood", but then refers to "eaten up time" and "the officer being taken away from the jail and magistrate". Defendant will address these issues separately.

following categories: (1) "providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) "protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous"; and (3) "preventing the destruction of evidence or contraband." *Gutierrez v. State*, 221 S.W. 3d 680, 685 (Tex.Crim.App.2007). In the instant case the State seems to be arguing the third, specifically the dissipation of blood due to a "combative" defendant.

In its findings of fact and conclusions of law, the trial court held that there were no exigent circumstances, stating:

> "... medical intervention did not present exigent circumstances which would have made a warrantless blood draw objectively reasonable. According to Officer Johnson's testimony, it would have been the same amount of time had a warrant been sought."

The State claims that Officer Johnson's delay due to the Defendant's odd behavior was so substantial that it "ate" into the time Officer Johnson had to seek a warrant to search the Defendant's blood. However, once it was established that no search warrant had been obtained the State never met its burden to prove an exception to the warrant requirement to seize the Defendant's blood.

The State specifically points to the Record and time elapsed due to a "medical emergency" as the reason behind Officer Johnson's failure to obtain a warrant. As per Officer Johnson's estimate, the medical intervention cut 1 hour of time out of his investigation. However, Officer Johnson made it quite clear that he **never** intended to obtain a warrant, and did not explore the possibility of doing so. He merely parroted "policy" as the reason behind his not seeking a warrant during the course of two and one-half hours.

In more detail, the State claims that the Defendant's peculiar behavior once arriving at the APD Sally Port constituted a medical emergency, and that consequently Officer Johnson acted accordingly in going forward with a warrantless blood draw. However, the notion the Defendant's behavior was a medical emergency is not supported by the Record. Referring to the testimony of Officer Johnson, at no point does he claim that he was in fear for the Defendant's life, nor does he claim the Defendant suffered injuries requiring medical attention. Johnson simply stated that he called EMS merely as a precautionary measure, and followed stating that the Defendant's resistance was easily controlled after EMS sedated him via 5 milliliters of Versed. 2RR 65-66. If anything, the Record reflects that EMS came to Officer Johnson's aid solely to sedate the Defendant so a warrantless blood draw could successfully be administered.

The State also cites Officer Johnson claiming a warrant usually takes 45 minutes to an hour to obtain. 2RR 38-39. At the time of his testimony Officer Johnson openly admitted that he **never** obtained a search warrant for blood during the course of any investigation before Defendant's arrest. 2RR 38-39. This testimony brings Johnson's familiarity with the process of obtaining a warrant (at that time and based on his experience) directly into question. Further, this lack of experience in obtaining blood warrants sheds light on Johnson's credibility regarding the various options he had to obtain a warrant. The Record shows Johnson's testimony merely parroted "process" and "procedure" regarding APD blood warrant policy as his excuse for not obtaining a warrant. 2RR 36-37, 39-40, 59.

Next, the State approaches the issue of something that "was not explored in detail" during the scope of the suppression hearing in this case. Particularly, how much longer it would take for Officer Johnson to obtain a warrant for the Defendant's blood while at Breckenridge. Specifically, the State claims there is no testimony pertaining to Officer Johnson ability to communicate his need for a warrant to his corporal or a detective. This argument is sheer speculation and merely a red herring. The State is attempting to testify on Officer Johnson's behalf as to his availability of resources to contact other officers. The converse argument can easily be

made that there is no indication that he *did not* have access to a computer, or a printer, or a phone to acquire a search warrant. At the bare minimum, the Court can conclude that an officer of the law in Texas' capital city most certainly had access to a radio. The one fact Officer Johnson did establish is that he was full aware he could obtain a warrant via telephone at the time of the Defendant's arrest, which he did not attempt to do. 2RR 58-59.

The State then assumes that "even if" Officer Johnson obtained a warrant while at Breckenridge he "would have had to wait for a corporal to come pick it up and take it to the magistrate at the jail." This argument goes on to claim that Officer Johnson established it takes up to 45 minutes to an hour to obtain a warrant at the jail. State's Brief at 11. Here the State implicitly claims that Officer Johnson's only opportunity to obtain a warrant during the course of his investigation began the moment that he arrived at Breckenridge Hospital at roughly 3:00 a.m. 2RR 68. However, Officer Johnson had an opportunity to begin the process of obtaining a warrant when he arrived at the BAT Bus and realized that the Defendant was charged with his 3rd or more DWI, at roughly 1:45 a.m. 2RR 67. Applying that timeframe in accordance with Officer Johnson's testimony, had he begun the process to obtain a warrant once discovering the Defendant was on his 3rd DWI arrest he

would have been clear to draw the Defendant's blood in compliance with the Fourth Amendment by, at the latest, 2:45 a.m.[4] 2RR 38.

The State also urges, "it does not appear that Officer Johnson spent any part of the night standing around and wasting time." State's Brief at 11. This argument assumes that Officer Marcos Johnson is the only set of boots on the ground for the Austin Police Department, which currently boasts approximately 1,800 sworn peace officers.[5] As supported by the Record, Officer Johnson directly states that the process of obtaining a warrant includes not only him, but also a detective or corporal that would take paperwork to a magistrate for approval. 2RR 36, 59. Considering the Record, the Court can safely conclude that Officer Johnson failed to utilize the resources available to him to obtain a warrant and request assistance in his investigation.

Therefore, in light most favorable to the trial court's finding, the positions that an exigency exception did not exist and obtaining a warrant would have taken a similar amount of time as the alleged medical

---

[4] This calculation assumes that Officer Johnson's familiarity with the process of obtaining a warrant at the time of Defendant's arrest is *actually* credible.

[5] This statistic was taken from the City of Austin website, located at the following URL https://www.austintexas.gov/faq/how-many-sworn-officers-work-austin-police-department .

*State v. Martinez*                    13
*APPELLATE CAUSE NO. 03-14-00588-CR*

intervention are abundantly supported by the record, and the State's first argument fails.

### ii. Totality of the Circumstances

The State contends that the trial court's holding regarding Officer Johnson's decision to conduct a warrantless blood draw was unreasonable fails on its face. In support of its argument the State points to language in the Supreme Court's ruling in *Missouri v. McNeely*, 569 U.S.____, 133 S. Ct. 1552, 1561, 185 L. Ed. 2d 696 (2013). In *McNeely*, the Supreme Court held that the totality of the circumstances must be considered when determining when the of the exigency exception to the warrant requirement is triggered. Id at 1552, 1561. However, the State failed to acknowledge the underlying facts articulated in *Schmerber v. California*, 384 U.S. 757 (1966), the precedent relied on in *McNeely*, dictating the "totality of the circumstances" regarding nonconsensual warrantless blood draws. In *Schmerber* the suspect was involved in a collision, suffered injuries worthy of a hospital visit, and his blood drawn pursuant to a DWI investigation. *McNeely* at 1561. In contrast to *Schmerber*, the Defendant's case in totality lacked a collision, significant injuries, and it can be concluded his trip to the hospital was geared solely toward the prospect of sedating him to a point where blood sample for BAC testing could be acquired. Further, the State compares the facts of the

Defendant's case to *Schmerber*, quoting *McNeely*, "...an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results." Id. However, the State fails to take into consideration that *Schmerber* is almost 50 years old. At the time *Schmerber* was decided the arresting officer did not have the wealth of resources Officer Johnson had to obtain a warrant in a quick and efficient manner. *See McNeely*, 113 S.Ct. at 1561-62 (stating that much technological advancement has occurred since *Schmberber* was decided); *See also Weems v. State*, 434 S.W.3d 655-666.

Lastly the State sums its first argument as:

> "the State is not arguing exigency based solely on the dissipation of alcohol in the blood. Instead, there was an actual medical emergency and a combative defendant, which at up time and took the officer away from the jail and the magistrate." State's Brief at 13.

This summarization contradicts itself. The State claims not to be arguing exigency *solely on the dissipation of alcohol in the blood*, but then refers to the Defendant taking the arresting officer away from the jail and the magistrate, which directly goes to the dissipation of alcohol in the blood. Id. Based on the time and various avenues Officer Johnson had to obtain a

warrant he easily could have done so if he made an attempt. Further, in tune with the holdings in *McNeely* and *Villarreal*, the dissipation of alcohol in blood is not a deciding relevant factor to consider when determining exigency, and neither of those cases makes a ruling as applied to "combative" defendants. Therefore, the dissipation of alcohol in blood and "a combative defendant" should receive no consideration as primary factors in an exigency determination.

***Point Two: Pursuant to the Court of Criminal Appeals ruling in Villarreal, and the rulings of many other Courts throughout Texas, it is explicit that the mandatory blood draw statute does not circumvent the 4th Amendment's requirement for a warrant. The State's point lacks merit.***

The state's second point is meritless when considering the Court of Criminal Appeals ruling in *Villarreal*. However, Defendant will address the State's arguments in States Point 2 in turn.

The state argues that "the warrantless blood draw was mandated by statute." In *Villarreal* the Court of Criminal Appeals brought light to the fact that the mandatory blood draw statute was silent as to whether or not the arresting officer was required to obtain a warrant before drawing blood, quoting the statute directly that a peace officer "shall require the taking of a specimen" but makes no reference to 4th Amendment warrant requirements.

*Villarreal* at 19. However, the ruling in *Villarreal* did speak to the Legislature being unable to restrict an individual's constitutionally guaranteed rights, stating, "The Legislature may not restrict guaranteed rights set out in constitutional provisions". *Villarreal* at 19 (quoting *Venn v. State*, 85 Tex.Crim. 633, 218 S.W. 1060 (1920)). Therefore, the State's first argument on State's Point 2 fails and lacks merit.

Next, the state argues that, "The court should conduct a traditional balancing test to evaluate the constitutionality of the statue." Once again, *Villarreal* speaks directly to this point. Specifically, the Court of Criminal Appeals opined that "the warrantless, nonconsensual blood testing of a DWI suspect's blood does not categorically fit within any recognized exception to the Fourth Amendment's warrant requirement, nor can it be justified under a general Fourth Amendment balancing test." *Villarreal* at 1. In *Villarreal* the State argued that a traditional approach must be taken when considering intrusiveness of the mandatory blood draw statute, requiring the court to weigh the "promotion of legitimate governmental interests' against 'the degree to which [the search] intrudes upon an individual's right to privacy." *Villarreal* at 16 (quoting *Houghton,* 526 U.S. at 300, 119 S.Ct. 1297). At the core of their argument for a traditional balancing test the State in *Villarreal*, relied on *Maryland v. King* a case in which the Supreme Court upheld the

warrantless collection of DNA from felony arrestees. In *King*, law enforcement was collecting DNA from arrestees not for the sake of gathering evidence against them, but for the simple procedure of inmate identification.

In rejecting the State's argument and its reliance on *King*, the Court of Criminal Appeals reiterated the Supreme Court's holding in *McNeely*, stating "the warrantless search of a person is unreasonable unless it falls within an establish exception to the warrant requirement." The *Villarreal* opinion further speaks directly to the facts in *King* stating that the intrusion that took place in *King* is far less substantial than puncturing a vein in a DWI investigation. *Villarreal* at 18. Further, in its rejection of the State's argument, *Villarreal* discusses that police officers in *King* were acting with no discretion, whereas, during the course of a DWI investigation the primary purpose of an officer is to make a discretionary probable cause determination to investigate and search potential intoxication. *Villarreal* at 17. Last, the Court of Criminal Appeals in *Villarreal* rejects the State's balancing test argument in stating,

> "if we were to accept the viability of a Fourth Amendment
> balancing test here as a substitute for the established exceptions
> to the warrant requirement, we conclude that, on balance, a
> DWI suspect's privacy interest outweighs the State's interest in

preventing drunk driving through warrantless searches."
*Villarreal* at 18.

Therefore, State's second argument to State's Point 2 as well as State's point 3, fails.

**Point Three: The Defendant never consented to the blood draw and a person has an absolute right to refuse a test and it is explicit that implied consent is not an exception to the 4th Amendment's requirement for a warrant. The State's point lacks merit.**

Tex. Transp. Code § 724.011(a), or the implied consent statute, has been deemed to not waive a person's Fourth Amendment rights in relation to a warrantless blood draw during the course of a DWI investigation, where the individual unequivocally withdrew or revoked his consent. *Villarreal* at 11. The State in *Villarreal* argued that an individual implicitly gave consent to a search of their blood or breath by enjoying the benefit of driving on public roadways in Texas, and this implicit consent could not be withdrawn or revoked. Id. However, the Court of Criminal held that "implied consent that has been withdrawn is not voluntary consent." Id. Specifically, the Court of Criminal Appeals opined that in order to constitute a valid waiver of an individual's Fourth Amendment rights, consent to search must be given freely and voluntarily. Id (quoting *Schneckloth*, 412 U.S. at 227, 93 S.Ct.

2041). Another necessary component of valid consent is an individual's ability to revoke or limit it. *Miller v. State*, 393 S.W. 3d 255, 266 (Tex.Crim.App.2012). The analysis of whether consent is given voluntary is a question of fact to be determined by the totality of the circumstances. *Villarreal* at 11 (quoting *Schneckloth*). Moreover, prior to the Court of Criminal Appeal's decision in *Villarreal* several appeals courts throughout Texas held that warrantless, nonconsensual blood draws were unconstitutional absent exigent circumstances. *See Reeder v. State*, 428 S.W.3d 924 (Tex.App.-Texarkana 2014, pet. granted); *Sutherland v. State*, 436 S.W.3d 842 (Tex.App-Amarillo 2014, no pet.); *Douds v. State*, 434 S.W. 3d 842 (Tex.App.-Houston [14th Dist.] 2014, pet. granted; *Weems v. State*, 434 S.W.3d 655 (Tex.App.-San Antonio, pet. granted); *Holidy v. State*, No-06-13-00261-CR, 2014 WL 1722171 (Tex.App.-Texarkana Apr. 30, 2014, pet granted) (mem. Op., not designated for publication).

As applied to the facts in the Record, Officer Johnson made it clear that the Defendant unequivocally denied consent for the search of his blood or breath. 2RR 35. Hence, based on precedent, the State's reliance on Tex. Trans. Code § 724.011(a) fails to justify the warrantless blood draw in the instant case due to Defendant asserting his right withdraw his consent for the search of his blood.

*POINT FOUR: The State's argument that Tex. Code Crim. Pro. Art. 38.23 does not apply: (1) "at the time" evidence was collected in accordance with then existing law fails due to the retroactive application of McNeely does not recognize the lights most favorable to the trial court's ruling; (2) the State fails to acknowledge facts viewed in light most favorable to the trial court's ruling that exigency in the instant case did not exist; (3) the State's argument in Point Four can be distinguished.*

**i.     Application of the law and precedent "at the time of arrest."**

Defendant takes a multi-faceted approach in addressing the argument in State's Point 4. Even though it claims it is not arguing a "back door" to good faith, the State is attempting introduce evidence into a pending criminal prosecution that was later ruled to have been collected in an unconstitutional manner, and not in accordance with the laws of Texas. Specifically, the State is attempting to articulate in a round-a-bout way that the blood draw taken from Defendant should be allowed in, and that the Supreme Court's ruling in *McNeely*, and the subsequent Court of Criminal Appeals ruling in *Villarreal* should not retroactively apply to the Defendant's case.[6]

---

[6] Please note that Defendant's approach to addressing State's Point 4 is an attempt at making the most sense of the State's argument. In summary, the State claims *"assuming arguendo, **that the blood draw is unconstitutional**, the Texas exclusionary rule still does not bar the admission of evidence"*. In this particular argument the State concedes the blood draw in the instant case unconstitutional

The Texas Fifth Court of Appeals and Sixth Court Appeals have addressed "whether art 38.23 is triggered'' during a mandatory blood draw in pending cases that factually occurred prior the Supreme Courts ruling in *McNeely*. The Fifth Court in *Bowman v. State*, opined that a warrantless blood draw under Chapter 724 of the Texas Transportation Code was a violation of a suspects Fourth Amendment rights. *Bowman v. State*, 2015 WL 557205. Further, the Fifth Court stated that the trial court's opinion in *Bowman* regarding exigency that qualified a warrantless blood draw was unconstitutional.

In *Bowman*, the State advanced an argument much similar to State's Point Four in the instant case, claiming "everything that he did was appropriate" according to the Texas Transportation Code regarding the arresting officer's warrantless draw of the suspect's blood, and that exigent circumstances existed based on precedent "at the time" the arrest of Bowman occurred. Id at 9. The Fifth Court however, rejected this argument and referred to the application of the Supreme Court's ruling in *McNeely*, specifically "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the

---

(which is supported by the findings of the trial court and a slew of case law). Hence, Article 38.23 does trigger since the evidence was obtain in violation of the 4th Amendment of the Constitution, and the evidence, by law, is suppressed. Here the State argues the Defendant's position.

circumstances." *Bowman* at 9 (quoting *McNeely* at 1568). In doing so the Fifth Court applied the Supreme Court's new rule and standard in examining warrantless blood draws in DWI investigations retroactively, to cases pending at the time *McNeely* was decided. *Bowman* at 10. Particularly, in regard to the retroactive use of *McNeely* in litigation pending at the time it was decided the Fifth Court stated, "[N]ew rules governing the conduct of criminal prosecutions apply retroactively to all cases pending on direct appeal or not yet final at the time the new rule is announced regardless of whether they constitute a clear break from past precedent." *Bowman* at 10.

Exigent circumstances in *Bowman* were found to be nonexistent, the Fifth Court determining that "[T]he focus of exigent circumstances analysis in this context (DWI investigation) is not on the delay attendant to an investigation, ... but on the delay necessary to obtain a warrant." *Bowman* at 11 (quoting *Douds v. State*, 434 S.W.3d 842, 851 (Tex.App.—Houston [14th Dist.] 2014, pet. granted)). Factually *Bowman* differs from the instant case in that it was an investigation that involved a major traffic accident and backup arriving late to the scene of the investigation. Id at 11. The Fifth Court turned their analysis on the different options available to the arresting officer in *Bowman* to obtain a warrant, rather than the circumstances surrounding the accident and arrest. *See,* Id.

In contrast in the Defendant's case the facts as supported by the Record drastically detail less exigency. As testified by Officer Johnson, he arrived at a scene involving no accident that he immediately determined was not dangerous in nature, he conducted a DWI investigation, and at no time did he attempt to explore the options available to him to retrieve a warrant, nor did he call a detective or a corporal to assist him in getting a warrant. 2RR 36, 38, 58. As such, the State is attempting to draw focus away from Officer Johnson's lack of exploring his various options to obtain a warrant in their exigency argument, and therefore their argument fails.

The Fifth Court in Bowman relied heavily on the Sixth Court of Appeals decision in *Cole v. State*, 2014 WL 7183859. In *Cole* the Sixth Court faced a similar argument advanced by the State, claiming that there was no "retroactive" application of the Supreme Court's ruling in *McNeely* to a case whose trial was pending at the time *McNeely* was issued (referring here to the State's argument that "at the time" the actions of Officer Johnson's actions were constitutional). In *Cole,* the Sixth Court examined exigency and the constitutionality of a warrantless blood draw made pursuant to the mandatory blood draw statute and implied consent. In their opinion, the Sixth Court reasoned that *McNeely* had retroactive application to the accused's case. *Cole at* 11. In support of their ruling the Sixth Court

referred to the Supreme Court's ruling in *Griffith v. Kentucky*, which held that:

> "new rules governing the conduct of criminal prosecutions apply retroactively to all cases pending on direct appeal or not yet final at the time the new rule is announced regardless of whether they constitute a clear break from past precedent."
>
> *Griffith v. Kentucky*, 479 U.S. 314, 326-38, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).[7]

The primary focus of the Sixth Court's reasoning was to ensure that defendants in similarly situated positions are granted the same amount of protection under new precedent set forth by the Supreme Court.

Further, the trial court cites to *McNeely* in its findings of fact and conclusions of law. CR 61-63. In doing so the it can be determined that the trial court adopted the standard in *McNeely* in making its ruling in the instant case. As such, taking the Sixth Court's position in *Cole* into consideration, and applying the rulings in *Griffith*, *McNeely*, and *Villarreal*, the State's argument that "at the time" the Officer Johnson did not violate the law fails.

## ii.    Facts must be viewed in light most favorable to the trial court's ruling.

[7] The Sixth Court also cites *McClintock v. State*, 444 S.W.3d 15 (Tex.Crim.App.2014); *Steadman v. State*, 360 S.W.3d 499, 504 n. 13 (Tex.Crim.App.2012)).

Taking into consideration the State's position that "at the time" exigency existed, "assuming arguendo" that the blood draw was unconstitutional, there cannot be a finding of exigency. The trials court's decision on the fact of the case must be seen in the light most favorable to its findings assuming the court's findings were implicitly supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 327-8 (Tex.Crim.App.2000). As applied to the facts of the case and reflecting on the record and the trial court's findings of facts and conclusions of law, the circumstances surrounding the instant case did not constitute exigency. Simply put, the trial court rejected the State's argument of exigency, and moreover the State supports that finding in "assuming arguendo" that the blood draw was unconstitutional. Hence, the State's agrees no viable exception to the warrant requirement existed, and the blood draw is correspondingly suppressed.

### iii. The cases the State cites in Point Four can be distinguished from the instant case.

The State cites two separate cases in support of its round-a-bout, "not a back door" argument to good faith, and reliance of case law "at the time". Specifically the State cites, "*State v. Johnson*, 871 S.W.2d. 744, 750-51 (Tex. Crim. App. 1994) (no exclusion when there is attenuation of taint); *Wehrenberg v. State*, 416 S.W.3d 458, 467-70 (Tex. Crim. App. 2013) (no

exclusion when there is an independent source)." In regard to the two cases cited by the State, the courts of Texas have never prospectively applied art. 38.23, and moreover the statute the State relies on was enacted by the Texas Legislature, and was not created or articulated by the Supreme Court, the Texas Court of Criminal Appeals, or the appellate courts of Texas. Further, based on the plain language of the statute, the Texas Legislature did not provide for a broad "good-faith" exception, indicating that they wanted the statute to apply. See, *Tex. Code Crim. Pro. Art. 38.23*.

Specifically, the facts of the instant case can be distinguished from the holdings in *Wehrenberg* and *Johnson*, in that, those cases involved unlawful activity, however, the evidence that was ultimately obtained by legal means. See *Wehrenberg* at 462, 469 (evidence gathered by the State was pursuant to a validly executed search warrant reliant on a confidential informant rather than improper police conduct.); See *Davis* at ___ (the statement of a defendant after a warrantless arrest was still admissible because and arrest warrant was obtained after the warrantless arrest but before the statement was given.) These cases are distinguishable from the instant case. Particularly, the blood draw in Defendant's case is the *only* evidence gathered as a result APD's investigation and is the *only* evidence the State wishes to admit pursuant to the above-cited cases. As applied to the facts and precedent the

blood results are inadmissible because they were never obtained in a legal fashion and is the product of police misconduct.

Based on the foregoing analysis the State's argument in Point Four fails in all facets.

***POINT FIVE:*** ***Good faith under the federal exclusionary rule does not apply in the instant case.***

The State claims in State's Point Five that the "federal Exclusionary rule does not bar admission" of the unconstitutional blood draw administered by the Austin Police Department in the instant case. In support of its argument the State falls back on the application of the federal exclusionary rule, rather than the Article 38.23 of the Texas Code of Criminal Procedure, and cites *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L. Ed. 2d 364 (1987).

This argument was recently addressed by the Fourth Court of Appeals in San Antonio, in *State v. Weems,* 434 S.W. 3d 655. In *Weems,* the State argued that the good faith exception to the federal exclusionary rule applies to a warrantless blood draw in Texas, an argument rejected by the 4th Court. *Weems* at 666 (21 cases cite this headnote, citations excluded). In support of their finding, the Fourth Court opined that the Texas exclusionary rule offers an accused, on its face, more constitutional protection than the federal rule.

Id. Explicitly stating, under the Texas exclusionary rule, the good faith exception can only be triggered when a police officer relies on a warrant issued by a neutral magistrate. Id. Hence, in application to Defendant's case, Officer Johnson **_never_** attempted to obtain a warrant and the good faith exception cannot trigger. Put simply, the State's argument fails.

## Prayer

The Defendant asks this Court to uphold the ruling of the trial court, and suppress the blood analysis unconstitutionally obtained by the State in violation of the United States Constitution, the Texas Code of Criminal Procedure, and Texas and federal precedent.

Respectfully submitted,

John Nicholas de la Viña
Attorney and Counselor At Law
SBN: 24078407
702 Rio Grande
Austin, Texas 78701
512.897.3325 (p)
512.501.6307 (f)
delavina.law@gmail.com
www.delavinalaw.com

## Certificate of Compliance and Service

I hereby certify that this letter contains 6,217 words, based upon the computer program used to generate this letter and excluding words contained in those parts of the letter that Texas Rule of Appellate Procedure 9.4(i) exempts from inclusion in the word count, and that this letter is printed in a conventional, 14-point typeface. I further certify that, on the 1st day of April, 2015, a true and correct copy of this letter was served, electronic mail, facsimile, or electronically through the electronic filing manager, to the Appellant's attorney, Angie Creasy, Travis County District Attorney's Office.

John Nicholas de la Viña