PD-0723-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/15/2015 1:09:37 PM
Accepted 7/17/2015 1:20:30 PM
ABEL ACOSTA
CLERK

# IN THE COURT
# OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| **TROY SCOTT BURCIE,** | § | |
| *APPELLANT* | § | |
| | § | |
| **V.** | § | **PD-0723-15** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| *APPELLEE* | § | |

§ § §

## STATE'S PETITION FOR DISCRETIONARY REVIEW

§ § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687   FAX (817) 884-1672
State Bar No. 02760900
ccaappellatealerts@tarrantcountytx.gov

LISA C. MCMINN,
State Prosecuting Attorney

FILED IN
COURT OF CRIMINAL APPEALS

July 17, 2015

ABEL ACOSTA, CLERK

## ORAL ARGUMENT IS NOT REQUESTED

## IDENTITY OF THE PARTIES AND COUNSEL

The State of Texas is represented by the Hon. Sharen Wilson, Tarrant County Criminal District Attorney. Additionally, representing the State on appeal is the Hon. Tanya S. Dohoney, Assistant Criminal District Attorney and Hon. Debra Windsor, Post-Conviction Chief. At the trial level, Hon. Erin Cofer and Hon. Tanya S. Dohoney represented the prosecution. The State's attorneys' address is Office of the Criminal District Attorney of Tarrant County, Tim Curry Criminal Justice Center, 401 W. Belknap, Fort Worth, Texas 76196-0201.

Appellant, Defendant below, is Troy Scott Burcie. Hon. Abe Factor, Factor & Campbell, 5719 Airport Freeway, Fort Worth, Texas, 76117 represented Appellant at trial and now on appeal. Hon. Tim Robinson, 2010 N. Park Blvd., #112, Grapevine, Texas 76051 also represents Appellant on appeal.

The Hon. Mollee Westfall, judge of the 371st Judicial District Court in Tarrant County, Texas, presided over Appellant's case.

# SUBJECT INDEX

PAGE

IDENTITY OF THE PARTIES AND COUNSEL.............................................ii

SUBJECT INDEX ........................................................................... iii

INDEX OF AUTHORITIES.................................................................. v

STATEMENT REGARDING ORAL ARGUMENT........................................1

STATEMENT OF THE CASE ..............................................................2

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE .............2

STATEMENT OF FACTS ....................................................................3

QUESTIONS PRESENTED FOR REVIEW..............................................4

FIRST QUESTION FOR REVIEW .........................................................4

> Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?  (1CR at 21, 81–82; 2RR at 5, 61)

SECOND QUESTION FOR REVIEW ......................................................4

> Are Fourth Amendment warrant-preference exceptions the sole measure of Fourth Amendment reasonableness in warrantless scenarios?  (1CR at 21, 81–82; 2RR at 5, 61)

THIRD QUESTION FOR REVIEW...........................................................4

> Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw?  (1CR at 21, 81–82; 2RR at 5, 61)

ARGUMENTS AND AUTHORITIES..............................................................5

I.    Valid, compelled statutory blood draw ..................................................6

        A.    Codification of Fourth Amendment principles............................7

        B.    Special-needs framework adds to the reasonableness calculation ................................................................................9

        C.    Erroneous consideration of the "Less Intrusive Means" test .......................................................................................10

II.    Implied-consent draws are reasonable ................................................11

III.    Exclusionary rule inapplicable and not invoked..................................13

CONCLUSION AND PRAYER....................................................................16

CERTIFICATE OF COMPLIANCE..............................................................17

CERTIFICATE OF SERVICE......................................................................17

APPENDIX ............................................................................................ A

# INDEX OF AUTHORITIES

## Cases

*Breithaupt v. Abram*,
352 U.S. 432 (1957) ...................................................................................13

*Burcie v. State*,
No. 08-13-00212-CR, 2015 WL 2342876
(Tex. App.—Fort Worth Mar. 14, 2015).................................................3, 5

*Cole v. State*,
454 S.W.3d 89 (Tex. App.—Texarkana 2014, pet. granted)..................5n, 6

*Davis v. United States*,
564 U.S. ___, 131 S. Ct. 2419 (2011) .......................................................14

*Douds v. State*,
434 S.W.3d 842
(Tex. App.—Houston [14th Dist.] June 5, 2014, pet. granted) ...............5n, 6

*Heien v. North Carolina*,
___ U.S. ___, 135 S. Ct. 530 (2014)...................................................15, 16

*Holidy v. State*,
No. 06-13-00261-CR, 2014 WL 1722171
(Tex. App.—Texarkana Apr. 30, 2014, pet. granted)
(mem. op., not designated for publication) ...............................................5n

*Hulit v. State*,
982 S.W.2d 431 (Tex. Crim. App. 1998) ............................................11, 12

*Illinois v. Krull,*
480 U.S. 340 (1987) ...................................................................................14

*Maryland v. King*,
569 U.S. ___, 133 S. Ct. 1958 (2013).......................................................12

*McGee v. State*,
105 S.W.3d 609 (Tex. Crim. App. 2003) ......................................................12

*McGruder v. State*,
No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089
(Tex. App.—Waco 2014, pet. granted) .......................................................5n

*Michigan Dept. of State Police v. Sitz*,
496 U.S. 444 (1990) ...................................................................................12

*Michigan v. DeFillippo*,
443 U.S. 31 (1979) .....................................................................................15

*Miles v. State*,
241 S.W.3d 28 (Tex. Crim. App. 2007) .......................................................7

*Missouri v. McNeely*,
569 U.S. ___, 133 S. Ct. 1552 (2013) ...............................................*passim*

*Reeder v. State*,
428 S.W.3d 930 (Tex. App.—Texarkana 2014, pet. granted).....................5n

*Segundo v. State*,
270 S.W.3d 79 (Tex. Crim. App. 2008),
*cert. denied*, 558 U.S. 828 (2009) .............................................................12

*Skinner v. Railway Labor Executives' Ass'n*,
489 U.S. 602 (1989) ......................................................................... 9, 10, 11

*Smith v. State*,
No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759
(Tex. App.—Corpus Christi 2014, pet. granted) ........................................5n

*Sotelo v.* State,
913 S.W.2d 507, 510 (Tex. Crim. App. 1995) .........................................13n

*State v. Villarreal*,
PD-0306-14, ___ S.W.3d ___,
2014 WL 6734178 (Tex. Crim. App. 2014)........................................*passim*

*Tharp v. State*,
935 S.W.2d 157 (Tex. Crim. App. 1996) ...............................................9, 10

*Vernonia School Dist. 47J v. Acton*,
515 U.S. 646 (1995) .................................................................................10

*Weems v. State*,
434 S.W.3d 655 (Tex. App.—San Antonio  2014, pet. granted) ............5n. 6

*Welsh v. Wisconsin*,
466 U.S. 740 (1984) ...................................................................................8

## Statutes, Rules, Constitutions

TEX. CODE CRIM. PROC. art. 14.04.............................................................8

TEX. CODE CRIM. PROC. art. 18.16.............................................................7

TEX. CODE CRIM. PROC. art. 38.23...................................................... 14, 16

TEX. PENAL CODE § 1.07 ...........................................................................14

TEX. PENAL CODE § 49.04 .......................................................................2, 7

TEX. PENAL CODE § 49.09 .......................................................................2, 7

TEX. TRANS. CODE § 524.012....................................................................9

TEX. TRANS. CODE § 724.012.............................................................*passim*

TEX. R. APP. P. 66.3 ...................................................................................6

U.S. CONST. amend. IV .........................................................................8, 11

## IN THE COURT
## OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| TROY SCOTT BURCIE, | § | |
| *APPELLANT* | § | |
| | § | |
| V. | § | PD-0723-15 |
| | § | |
| THE STATE OF TEXAS, | § | |
| *APPELLEE* | § | |

## STATE'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF
THE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through her Tarrant County Criminal District Attorney, and respectfully urges this Court to grant discretionary review of this cause in accordance with the rules of appellate procedure.

## STATEMENT REGARDING ORAL ARGUMENT

Although the reasonableness of statutory mandatory blood draws merits argument, this Court has already granted petitions on similar issues and heard arguments from other parties regarding the issues discussed herein. Hence, the State does not request argument in this case.

1

## STATEMENT OF THE CASE

Appellant pled guilty to felony driving while intoxicated [DWI]. TEX. PENAL CODE §§ 49.04, 49.09.[1] (CR1:87–91, 93–94). At the time of the offense, officers seized Appellant's blood pursuant to the mandatory blood draw contained in Texas' implied consent law. TEX. TRANSP. CODE §724.012(b)(3). Before the El Paso Court of Appeals, Appellant relied on the Supreme Court's *McNeely* decision. *Missouri v. McNeely*, 569 U.S. ___, 133 S. Ct. 1552 (2013). The germane facts are undisputed, that is, that the State relied on Texas' mandatory blood-draw statute to support the instant warrantless seizure. (2RR).

Appellant's claim stems from an adverse pretrial ruling. (1CR at 93–95). Following the May 2013 suppression hearing, the trial judge rejected the defense argument attacking the validity of blood seized pursuant to the Texas implied-consent statute. (1CR at 21, 81–82; 2RR at 5, 61). Appellant later pled guilty pursuant to an agreement with the prosecution; this appeal ensued. (1CR at 93–95).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The El Paso Court of Appeals reversed the trial court's suppression ruling in an unpublished opinion authored by Chief Justice Ann Crawford

---

[1] Statutory references cited throughout refer to the current version unless noted.

2

McClure; Justices Rodriguez and Hughes rounded out the panel. *Burcie v. State*, No. 08-13-00212-CR, 2015 WL 2342876 (Tex. App.—Fort Worth Mar. 14, 2015). No one sought rehearing. The State timely files this petition, following one extension.

## STATEMENT OF FACTS

Appellant's felony DWI arose when an officer saw him driving without his headlamps illumined. (2RR at 7–8). After the stop, the Fort Worth officer discovered facts leading him to believe that Appellant drove while intoxicated (slurred speech, bloodshot eyes, aroma of alcohol). (2RR at 8–13). In the subsequent DWI investigation, the arresting officer sought a mandatory specimen under the Texas implied-consent law because: 1) he harbored probable cause to believe that Appellant committed DWI; 2) he had received reliable information regarding Appellant's two prior DWI convictions; and 3) Appellant refused to provide a specimen. (2RR at 12–13, 15–17, 19, 28–31). Therefore, an officer transported Appellant to the county hospital for a compelled blood draw. TEX. TRANSP. CODE § 724.012(b)(3). (2RR at 18–22, 25–26, 32–38; 3RR at SX2, SX3).

Additional evidence revealed that Fort Worth police officers have experience obtaining blood draw warrants and procedures in place to

3

facilitate such warrants. (2RR at 26–27, 33, 50–52). However, the arresting officer did not seek a warrant because he relied on the existing mandatory provisions of the Texas implied-consent statute. (2RR at 19, 27, 29, 36).

## QUESTIONS PRESENTED FOR REVIEW

### FIRST QUESTION FOR REVIEW
**Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**
**(1CR at 21, 81–82; 2RR at 5, 61)**

### SECOND QUESTION FOR REVIEW
**Are Fourth Amendment warrant-preference exceptions the sole measure of Fourth Amendment reasonableness in warrantless scenarios?**
**(1CR at 21, 81–82; 2RR at 5, 61)**

### THIRD QUESTION FOR REVIEW
**Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw?**
**(1CR at 21, 81–82; 2RR at 5, 61)**

## ARGUMENT AND AUTHORITIES

This Court is in the midst of grappling with the issues presented herein. Whilst a November 2014 decision addressed the merits of the Fourth Amendment issue in one of the several *McNeely*-related cases then pending, what appeared decided is now in flux since the Court granted – 2014 WL 6734178 (Tex. Crim. App. 2014) (reh'g granted, re-submitted Mar. 18, 2015).[2] The El Paso court's May decision heavily relied on this Court's original *Villarreal* opinion. *Burcie*, 2015 WL 2342876, at *1–4.

The State's instant petition focuses on two aspects of any McNeely-related consequences: *the validity of a statutorily-compelled draw and the invalidity of the exclusionary rule's application*. *Villarreal* only resolved the merits of the mandatory-draw issue, not addressing the applicability of the

---

[2] Additionally, the appellate milieu includes six other submitted *McNeely*-inspired cases, with yet another case granted and waiting in the wings for submission. *Douds v. State*, 434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] June 5, 2014, pet. granted) (submitted on arguments Mar. 13, 2015, PD-0857-14); *Weems v. State*, 434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted) (submitted on arguments Nov. 19, 2014, PD-0635-14); *Reeder v. State*, 428 S.W.3d 930 (Tex. App.—Texarkana 2014, pet. granted) (submitted on arguments Jan. 14, 2015, PD-0601-14); *Smith v. State*, No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759 (Tex. App.—Corpus Christi 2014, pet. granted) (submitted Apr. 29, 2015, PD-1615-CR); *McGruder v. State*, No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089 (Tex. App.—Waco 2014, pet. granted) (submitted Apr. 15, 2015, PD-1263-14); *Holidy v. State*, No. 06-13-00261-CR, 2014 WL 1722171 (Tex. App.—Texarkana Apr. 30, 2014, pet. granted) (mem. op., not designated for publication) (submitted on arguments Jan. 14, 2015, PD-0622-14); *see also Cole v. State*, 454 S.W.3d 89 (Tex. App.—Texarkana 2014, pet. granted Apr. 22, 2015) (briefing in progress, PD-0077-15).

exclusionary rule. *Villarreal*, 2014 WL 6734178. Nevertheless, that issue is already before this Court. *See Cole*, 454 S.W.3d at 89 (fourth ground granted); *see also Weems*, 434 S.W.3d at 666 (applying exclusionary rule); *Douds*, 434 S.W.3d at 861–62 (same). In other words, this Court has already granted review on both issues presented herein.

This Court should grant review because this case focuses on: important legal questions that have not yet been finally addressed; matters in conflict in the interim appellate courts; the misinterpretation of a Supreme Court decision; and the misapplication of that Supreme Court case to Texas implied-consent statute. TEX. R. APP. P. 66.3(a)(b)(c)(d)(f).

## I.     Valid, compelled statutory blood draw

The State's appellate stance is in lockstep with that of prosecutors from other counties across the State who have already had cases granted for review on a *McNeely*-related issue. Hence, the State respectfully asks this Court to dispose of the instant case in a manner consistent with the petitions in *Villarreal*, *Douds*, *Weems*, *Reeder*, *Smith*, *McGruder*, *Holidy*, and *Cole*. Here, the officer reasonably relied on an existing, ubiquitous narrowly-focused, reasonable statute to obtain a compelled blood draw. The seizure occurred when the officer—at the time of the offense—possessed probable cause that Appellant's impaired and intoxicated

6

conduct constituted felony DWI. TEX. PENAL CODE §§ 49.04, 49.09; TEX. TRANSP. CODE § 724.012(b)(2).

In addition, the State differs with *Villarreal's* original-submission decision and further asserts that several important arguments should be considered on the merits.

## A. Codification of Fourth Amendment principles

*Villarreal* failed to consider that the implied-consent statute codified Fourth Amendment principles. For instance, this Court has previously recognized a statutory codification of the exigency exception. *See Miles v. State*, 241 S.W.3d 28, 39–40 n.54 (Tex. Crim. App. 2007) (*citing* TEX. CODE CRIM. PROC. art. 18.16). *McNeely* recognized that every case involving the dissipation of alcohol included some exigency. *McNeely*, 133 S. Ct. at 1561, 1568. This ever-present exigency must be considered when assaying the reasonableness of statutory draws.

Combine the static alcohol-evaporation-exigency consideration with the Legislature's clear codification of the gravity-of-the-offense exigency. The implied-consent statute extinguished a defendant's right to refuse where an officer possesses probable cause to believe that certain enumerated, egregious circumstances exist. TEX. TRANSP. CODE § 724.012(b). Defendants only lose their refusal right under carefully

circumscribed scenarios involving felonious intoxication-related offenses and/or resultant injuries necessitating hospitalization. *Id.* The statute only applies to the most serious categories of DWI offenders.

This statutory limitation amounts to a codification of an additional recognized exigency unrelated to blood-alcohol dissipation. *Welsh v. Wisconsin* held that the Fourth Amendment authorizes common-sense consideration of the underlying offense's gravity when weighing the existence of an exigency. *Welsh v. Wisconsin*, 466 U.S. 740, 751–52 (1984) (exigency calculations include consideration of a crime's severity). Consideration of a crime's gravity is the essence of reasonableness because the State's interest is greater in a more serious case. *Cf*. TEX. CODE CRIM. PROC. art. 14.04 (authorizing warrantless arrests for felonies where an officer did not observe the offense).

Of course, it almost goes without saying that Texas' implied-consent legislation codified Fourth Amendment probable cause requirements. U.S. CONST. amend. IV. Predicate elements of the implied consent statute codify this well-known quantum-of-evidence as a requirement for a compelled search. TEX. TRANSP. CODE § 724.012(b). The probable cause requirement—in tandem with the codified gravity-of-the-crime and dissipation-of-alcohol exigencies—creates a neutral, non-arbitrary

8

framework authorizing a narrowly-defined seizure from an already-in-custody arrestee. These refinements in the implied-consent statutes structure embrace the essence of Fourth Amendment reasonableness.

**B. Special-needs framework adds to the reasonableness calculation**

The now-withdrawn *Villarreal* decision rejected application of the Supreme Court's special needs doctrine to the mandatory blood draw framework. *Villarreal*, 2014 WL 6734178, at \*14–15; *see Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). However, the Court did not consider that blood drawn pursuant to Chapter 724's mandate also implicates administrative license revocation [ALR] procedures, a separate regulatory process that focuses on protecting the traveling public by removing offenders from the road. *See* TEX. TRANSP. CODE § 524.012(b)(1) (mandating license suspension based upon BAC).

"The primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Tharp v. State*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996). Such regulation focuses on the government's strong interest in removing intoxicated drivers from the road, just as railroad regulation in *Skinner*

sought to increase railway safety by detecting intoxicated employees. *Compare Skinner*, 489 U.S. at 620–21 with *Tharp*, 935 S.W.2d at 159.

Special needs' principles recognize the statute's provision of a neutral, detached vehicle for protecting citizens from impaired drivers and defendants from unfettered discretion. The special-needs exception constitutes another factor to consider in a non-dualistic analysis that renders Texas' compelled-draw framework reasonable.

## C. Erroneous consideration of the "Less Intrusive Means" test

The original *Villarreal* decision considered the ready availability of warrants when rejecting the validity of Texas' mandatory draw statute. *Villarreal*, 2014 WL 6734178, at *18 (finding no compelling need to uphold warrantless, nonconsensual blood searches where warrants are "often readily available"). However, factors such as electronic warrants and the availability of a magistrate shift the focus away from an officer's conduct and, instead, weigh considerations of alternative means. *But see McNeely*, 133 S. Ct. at 1560–64 (Part IIB's alternative means analysis applied when determining whether *per se* exigency existed).

The Supreme Court resoundingly rejected applying less-intrusive-alternative-practices arguments to Fourth Amendment cases not resolved under the exigency exception. *Vernonia School Dist. 47J v. Acton*, 515

U.S. 646, 663–64 n.3 (1995) (upholding warrantless, random urine screening of athletes after considering diminished privacy, unobtrusiveness, and severity of need, spurning arguments relying on less intrusive alternatives); *Skinner*, 489 U.S. at 629 n.9 (upholding random, suspicionless drug screening of railway employees under special needs exception and discarding less-drastic-and-equally-effective-means arguments). One footnote in *Skinner* flatly debunks the propriety of considering less-drastic alternatives in scenarios that include warrantless and even suspicionless seizures for toxicological testing, similar to Appellant's facts. *Id.*

The State maintains that less-restrictive-alternatives logically apply when a seizure's validity rests solely on the temporal factors presenting an exigency; less-drastic, *post-hoc* what-ifs do not apply, however, to reasonableness calculations factoring in other warrantless exceptions. Hence, *Villarreal's* analysis mistakenly applied this eschewed construct.

## II. Implied-consent draws are reasonable

Reasonableness has always been the linchpin of the Fourth Amendment, venerated in the provision's plain language. U.S. CONST. amend IV; *Hulit v. State*, 982 S.W.2d 431, 435–36, 438 (Tex. Crim. App. 1998). Discernment of what is "reasonable" requires courts to consider the

11

balance between an individual's privacy and legitimate governmental interests, especially when public safety is of utmost concern. *See Maryland v. King*, 569 U.S. ___, 133 S. Ct. 1958, 1979 (2013); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 455 (1990); *Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008), *cert. denied*, 558 U.S. 828 (2009). *Villarreal* viewed the choice between applying a Fourth Amendment exception and consideration of a reasonableness balancing approach as mutually exclusive analytical constructs. The State respectfully believes that this black-white consideration of these two concepts is mistaken, especially in light of the fact that this Court has relied upon the balancing approach to assay reasonableness on similar issues. *See Segundo*, 270 S.W.3d at 96–99; *McGee v. State*, 105 S.W.3d 609 (Tex. Crim. App. 2003); *Hulit*, 982 S.W.2d at 434 n.1, 436.

Again, the statute is reasonable. Years ago, the Supreme Court recognized that a framework requiring a driver's consent was anything but nonsensical. The *Breithaupt* court pointed to then recently adopted implied-consent provisions and wrote:

> It might be a fair assumption that a driver on the highways in obedience to a policy of the State, would consent to have a blood test made as part of a sensible and civilized system protecting himself as well as other citizens not only from the hazards of the road due to drunken driving, but also from some use of dubious lay testimony.

12

*Breithaupt v. Abram*, 352 U.S. 432, 435 n.2 (1957). The State contends that compelled draws under implied-consent provisions are inherently reasonable when weighing the needs of all involved. Indeed, Fourth Amendment reasonableness underpins the statute. The well-known exceptions—as argued in the myriad cases already before this Court—considered individually and in concert with each other, alongside a balancing of the competing interests, all support the continued viability of Texas' implied-consent framework.

## III. Exclusionary rule inapplicable and not invoked[3]

Statutory mandatory blood-draws are reasonable. *But see Villarreal*, 2014 WL 6734178 (opinion on original submission; under re-submission). When the ink dries on *Villarreal* and future *McNeely*-related decisions and if those cases are adverse to the State on the merits, the rules requiring evidence exclusion should not apply to mandatory blood-draw scenarios that occurred prior to the Supreme Court's April 2012 pronouncement.

Federally, the good-faith exception to the Fourth Amendment's exclusionary rule applies when law enforcement, at the time of the search,

---

[3] Although unnecessary for preservation purposes, the State notes that it voiced this exclusionary rule argument below. *See Sotelo v.* State, 913 S.W.2d 507, 510 (Tex. Crim. App. 1995). The El Paso Court refrained from considering this issue, however. *Burcie*, 2015 WL 2342876, at *1-4.

acted with objectively reasonable reliance on (1) a statute, later declared unconstitutional, or (2) binding judicial precedent, subsequently overruled. *Illinois v. Krull*, 480 U.S. 340, 349–57 (1987) (statutes); *Davis v. United States*, 564 U.S. ___, 131 S. Ct. 2419, 2428–34 (2011) (caselaw).

Under state law, the Texas exclusionary rule is not invoked because—at the time of the offense—no violation occurred. The State recognizes that article 38.23(b)—Texas' limited good faith exception— requires a warrant. TEX. CODE CRIM. APP. § 38.23(b). Notwithstanding, invocation of exclusionary rule principles relies on article 38.23(a). That subsection's plain language requires a violation for exclusion to be triggered. When Appellant's blood was drawn, no one credibly questioned the validity of the officer's statutory authority. In other words, at the time of the seizure, the officer followed then-existing law. *See* TEX. CODE CRIM. PROC. art. 38.23(a); *see also* TEX. PENAL CODE § 1.07(a)(30) (defining "law" as meaning the state and federal constitution and statutes, in addition to the written opinions of a court of record); *see also Davis*, 131 S. Ct. at 2427–28 ("obtained" applies to unlawfulness at the time of the seizure; exclusion not triggered in an absence of police culpability). Simply put, the instant circumstances do not invoke exclusion.

14

The Supreme Court mentioned, in *dictum*, the application of the exclusionary rule versus Fourth Amendment violations in a non-blood-draw scenario decided recently. In *Heien*, the Court weighed the validity of an investigatory stop where the officer misunderstood the traffic code provision he relied on to support the stop. *See Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 538–39 (2014). The Supreme Court considered the reasonableness of the officer's mistake that lead to the stop and arrest when considering remedies. In so doing, the Court pointed out the myriad decisions finding exclusionary-rule invocation inappropriate where the officer's conduct—valid at the time—was later declared unconstitutional. *Id*. With only one justice dissenting, the Supreme Court's decision pondered the exclusionary rule's limits which had been briefly considered in *Michigan v. DeFillippo*. *Heien*, 135 S. Ct at 538–39; *see generally Michigan v. DeFillippo*, 443 U.S. 31, 3–9 (1979) (suggesting that exclusion might have been appropriate had the provision been "grossly and flagrantly unconstitutional").

Although the *Heien* discussion is merely *dicta*, it reiterates the importance of focusing on the fact that the instant officer's conduct fully complied with mandatory, settled law at the time of Appellant's arrest. *Heien*, 135 S. Ct. at 538–39. *McNeely* and subsequent caselaw

15

questioning implied-consent blood draws came later. Since, no violation occurred at the time of the Appellant's 2011 blood draw, Texas' exclusionary provision does not apply. TEX. CODE CRIM. PROC. art. 38.23(a). And since any legal error by the officer was reasonable, Fourth Amendment cases do not mandate the remedy of exclusion. *See Heien*, 135 S. Ct. at 539.

## CONCLUSION AND PRAYER

Review should be granted and the decision of the Court of Appeals should be reversed; Appellant's felony DWI conviction should be upheld.

<div style="margin-left:40%">

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

/s/ Tanya S. Dohoney
TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No.  02760900
ccaappellatealerts@tarrantcountytx.gov

</div>

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4 (i) because it contains less than 3500 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1), as computed by Microsoft Word, the computer software used to prepare the document.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY

## CERTIFICATE OF SERVICE

A true copy of the State's petition for discretionary review has been e-served to opposing counsel, the Hon. Abe Factor, lawfactor@yahoo.com, 5719 Airport Freeway, Fort Worth, Texas, 7611, on this, the 15th day of July 2015.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY

H:\DOHONEY.D11\PDRS\063015 burcie mcneely pdr and tables.docx

# APPENDIX

*Troy Scott Burcie v. State*,
2015 WL 2342876
(Tex. App.—El Paso 2015)

A

2015 WL 2342876
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

(DO NOT PUBLISH)
Court of Appeals of Texas,
El Paso.

Troy Scott Burcie, Appellant,
v.
The State of Texas, Appellee.

No. 08–13–00212–CR | May 14, 2015

Appeal from 371st District Court of Tarrant County, Texas (TC # 1287926D)

**Attorneys and Law Firms**

Charles M. Mallin, Tanya S. Dohoney, for The State of Texas.

Abe Factor, Tim Robinson, for Troy Scott Burcie.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

### OPINION

ANN CRAWFORD McCLURE, Chief Justice

**\*1** This DWI case presents an issue which has percolated through the courts of appeals, and which now has been resolved by the Texas Court of Criminal Appeals: can the State, consistent with the Fourth Amendment to the U.S. Constitution, take an involuntary blood sample based only upon the Texas implied consent statute? TEX.TRANSP.CODE ANN. § 724.012(b)(West 2011). Following the Texas Court of Criminal Appeals recent answer to that question in *State v. Villarreal,* No. PD–0306–14, 2014 WL 6734178 (Tex.Crim.App. Nov. 26, 2014, pet.granted), we reverse the conviction below.

### FACTUAL SUMMARY

The underlying facts are uncontested. Appellant was indicted for felony DWI, having had two prior convictions. The indictment arose out of Appellant's arrest on July 2, 2012. Officer Reyes of the Fort Worth Police Department initiated a traffic stop when he observed Appellant driving without headlights at 10:10 p.m. in the evening.[1] Based on Appellant's slurred speech, bloodshot eyes, and the odor of alcohol, Officer Reyes performed a field sobriety test. Appellant gave six of six positive clues for intoxication on the horizontal gaze nystagmus test; eight of eight clues on the walk and turn test; and three of seven clues on standing on one leg test. Appellant claimed at the time to have had "one beer with dinner."

[1] This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001 (West 2013). We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. *See* Tex.R.App. P. 41.3.

The officer placed Appellant under arrest at 10:50 p.m. A pat down search turned up a prescription pill bottle belonging to Appellant, but which contained a non-matching medication identified as OxyContin. The officer transported Appellant to the City jail where a blood sample was requested, but refused by Appellant. A criminal history check turned up two prior DWIs.

Based on the two prior DWIs, and Section 742 of the Transportation Code, the officer took Appellant to a local hospital where a blood sample was taken without his consent at 12:19 a.m. Officer Reyes' testimony makes clear that the Transportation Code was the single basis for obtaining the blood draw:

> Q. Okay. And is it your understanding that—or tell me why you were going to get a blood specimen from him.
>
> A. Well, at that point he was—he already had two prior convictions. He was arrested for DWI. So at that time we—it's a mandatory specimen. Even though he—he did not want to provide one, we have to, by law at the time, get one from him, and that's what we were doing.
>
> Q. Okay. And so you were following what you believed to be the law in requiring you to get a blood specimen?
>
> A. Yes, ma'am.

Fort Worth has a procedure in place to obtain a warrant during the late night hours, but Officer Reyes did not utilize it because of Section 724 of the Transportation Code

Appellant filed a motion to suppress the blood sample claiming that a warrantless blood draw violated the Fourth Amendment, particularly in light of the U.S. Supreme Court's recent decision in *Missouri v. McNeely,* 569 U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). The State responded by arguing that the actual holding of *McNeely* was narrow and not at issue in this case. It further asserted that a number of exceptions to the Fourth Amendment, including an implied consent exception under the Transportation Code, the "special needs" exception, the "search incident to arrest" exception, the automobile exception, and a cumulative "non-dualistic" exception to the Fourth Amendment justified the officer's actions. The trial court denied the motion to suppress without findings of fact or conclusions of law.

**\*2** Appellant then entered a guilty plea, reserving the ruling on the suppression motion for appeal. He was sentenced to two years in prison and assessed a fine. In a single issue, Appellant contends the trial court abused its discretion in upholding the involuntary blood draw in light of *McNeely.* The State responds, as it did below, contending *McNeely* is inapplicable, and justifying the involuntary blood draw on several exceptions to the Fourth Amendment: implied consent, search incident to arrest, and the "cumulative, non-dualistic approach to exceptions and reasonableness."

## ANALYSIS

The United States Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) held that an involuntary blood draw could pass Fourth Amendment scrutiny. The court first acknowledged that taking blood from a person constituted a search and seizure under the Fourth Amendment. *Id.* at 767. But the involuntary blood draw was reasonable under the exigent circumstances exception to the Fourth Amendment based on three facts established by the record in that case. *Id.* at 770–71. First, the court acknowledged that the percentage of alcohol in the blood begins to drop after a person stops drinking because the body eliminates it from the system (thus causing the destruction evidence). *Id.* Second, there was already a delay in taking the accused to the hospital because the officer had to investigate the scene of the accident where the accused was found. *Id.* Finally, the Court states that there was no

time to seek out a magistrate and secure a warrant. *Id.* Noting these "special facts" the court agreed the involuntary blood draw was appropriate. *Id.*

The court revisited the involuntary blood draw issue in *Missouri v. McNeely* where the State of Missouri contended that the singular fact that alcohol dissipates from the body was sufficient by itself to create an exigent circumstance justifying a warrantless seizure of a defendant's blood. 133 S.Ct. at 1560. A plurality of the court disagreed. It rejected a *per se* rule, instead reaffirming that whether the exigent circumstances exception is met must be judged on the totality of circumstances on a case by case basis. *Id.* at 1561. The court also explicitly stated that a warrantless blood draw must fall under one of the recognized exceptions to the Fourth Amendment. *Id.* at 1558.

The Texas courts of appeals grappled with whether *Missouri v. McNeely* invalidated non-consensual blood draws taken under the Texas Transportation Code. The Code mandates blood draws when an officer arrests a person for DWI and the person is either involved in an accident involving serious injury or death, or that person has two or more prior convictions for DWI. TEX.TRANSP.CODE ANN. § 724.012(b).[2] The courts of appeals have uniformly rejected the State's various arguments attempting to distinguish *McNeely* or apply other exceptions to work around it. *See Aviles v. State,* 443 S.W.3d 291 (Tex.App.–San Antonio, 2014, pet. filed); *Sutherland v. State,* 436 S.W.3d 28 (Tex.App.–Amarillo 2014, pet. filed); *Douds v. State,* 434 S.W.3d 842 (Tex.App.–Houston [14th Dist.] 2014, pet. granted); *Weems v. State,* 434 S.W.3d 655 (Tex.App.–San Antonio 2014, pet. granted); *Holidy v. State,* No. 06–13–00261–CR, 2014 WL 1722171 (Tex.App.–Texarkana Apr. 30, 2014, pet. granted)(mem. op., not designated for publication).[3]

[2] Germane to this case. Section–724.012(b) provides:
(b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle ... and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
(3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:

[3] We note that the trial court here heard the motion to suppress on May 31, 2013 which was little more than a

month after *McNeely* was handed down, and the trial court did not have the benefit of any of the recent cases construing *McNeely* and the Transportation Code.

**\*3** Any remaining doubt about these issues was resolved by the Texas Court of Criminal Appeals decision in *State v. Villarreal,* No. PD–0306–14, 2014 WL 6734178 (Tex.Crim.App. Nov. 26, 2014, pet.granted). In *Villarreal,* an officer initiated a traffic stop and in questioning the driver, found him to have slurred speech, red, watery eyes, and the strong smell of alcohol. *Id.* at *1. The driver refused to take the standard field sobriety tests. *Id.* When a background check showed the driver had several prior DWI convictions, the arresting officer took the driver to a hospital for a blood draw, despite the driver's non-consent. *Id.* at *2. The officer viewed the Transportation Code as mandating the blood draw, and while he "could have" obtained a warrant, he believed that the statute made a warrant unnecessary. *Id.* We view these facts as indistinguishable from Appellant's situation.

The trial court in *Villarreal* held the blood draw improper. *Id.* at *3. The court of appeals affirmed and the Texas Court of Criminal Appeals squarely confronted the State's implied consent argument under the Transportation Code. *Id.* at *6. It also addressed the State's (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04 [misdemeanor DWI].... alternative arguments that the automobile, search incident to arrest, and special needs exceptions to the Fourth Amendment applied. *Id.* at *14–15. Lastly the court addressed the State's claim that a general Fourth Amendment balancing test could justify the involuntary blood draw. *Id.* at *16. The Court rejected each of the State's proffered basis for the blood draw, concluding:

> We hold that the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement. We thus reject the State's assertion that a warrantless, nonconsensual blood draw conducted pursuant to those provisions can fall under one of the established exceptions to the warrant requirement described above, and we further reject the State's suggestion that such a search may be upheld under a

general Fourth Amendment balancing test.

*Id.* at *20.

The only distinguishing feature between *Villarreal* and this case is that in *Villarreal* the trial court granted the motion to suppress and here the trial court denied it. Under the applicable standard of review, we do afford almost total deference to the trial court's determination of the historical facts that the record supports. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). When the trial court is not asked to make findings of fact and conclusions of law, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Crim.App.2000). We also afford the same amount of deference to a trial courts' rulings on the application of the law to the facts—so called mixed questions of law and fact—if resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman,* 955 S.W.2d at 89. But we review *de novo* "mixed questions of law and fact" not falling within this category. *Id.* In *Villarreal,* for instance, the Court of Criminal Appeals noted that it reviewed the trial court's ruling *de novo* because the underlying facts were not disputed. 2014 WL 6734178 at *10.

In this case, there are also no disputed facts, at least none that would implicate any of the Fourth Amendment exceptions raised by the State. Each of the exceptions to the Fourth Amendment that the State urges in this case were expressly rejected by the Texas Court of Criminal Appeals in *Villarreal.*[4] Only the exigent circumstances exception was not at issue in *Villarreal,* 2014 WL 6734178 *9. But none of the facts in this record supports the kind of exigent circumstances that the U.S. Supreme Court found sufficient in *Schrimer.* Appellant was detained in a traffic stop and not an accident as in *Schrimer.* He was transported to a hospital less than two hours later for the blood draw. There was no indication that a magistrate judge was not available to issue a warrant had Officer Reyes pursued one.

[4] One exception urged here, the "cumulative, non-dualistic approach to exceptions and reasonableness" appears to us to be the same "general Forth Amendment balancing test" rejected by the Court of Criminal Appeals in *Villarreal.* To the extent it is meant to be something different, the State's one page presentation of that argument here cites no cases establishing it as distinct exception under the Fourth Amendment. All of the other exceptions advanced by

the State are identically worded to those expressly rejected in *Villarreal.*

**\*4** We also note that following *Villarreal,* the Fort Worth Court of Appeals decided *Burks v. State,* 454 S.W.3d 705 (Tex.App.–Fort Worth 2015, pet. filed) which overturned a trial court's denial of a motion to suppress. The defendant in that case, as here, was pulled over for a traffic violation, found to have overt signs of intoxication, and was taken for an involuntary blood draw because he had two or more prior convictions for DWI. *Id.* at 707. The officer believed the implied consent provisions of the Transportation Code permitted the blood draw. *Id.* Based on *Villarreal,* the Fort Worth Court reversed the trial court order denying the motion to suppress and the conviction. *Id.* at 708. *Burks* is particularly instructive to

us because in this transferred case, we are bound to follow the precedents of the transferring court of appeals. *See* TEX.R.APP.P. 41.3.

We accordingly sustain Appellant's single issue and we reverse the trial court's order denying Appellant's motion to suppress and the trial court's judgment of conviction, and remand the case to the trial court for further proceedings consistent with this opinion.

**All Citations**

Not Reported in S.W.3d, 2015 WL 2342876

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.